# Commonwealth, Appellant, v. Maxwell et al.

*Jury—Qualifications—Constitutional law—"Trial by jury shall be as heretofore"—Women as jurors—Nineteenth Amendment to Constitution of United States—"Elector"—Words and phrases— Act of April 10, 1867.*

1. The provision of the Constitutions of Pennsylvania of 1790, 1838 and 1873 "that trial by jury shall be as heretofore," refers to the kinds of causes triable before juries, and the trial, not the qualifications of the jurors.

COMMONWEALTH, Appel., *v.* MAXWELL et al. 379

2. The qualifications of jurors is now, and has always been, even at common law, the subject of legislative control.

3. The term "elector" is a technical, generic term, descriptive of a citizen having constitutional and statutory qualifications that enable him to vote.

4. The designation "qualified elector" in the Act of April 10, 1867, P. L. 62, requiring jury commissioners to select a jury "from the whole qualified electors" of the county, embraces all electors at the time jurors are selected from the body of the electors, and also all those who may be added to the electorate from time to time.

5. Under the Act of April 10, 1867, and the Nineteenth Amendment to the Constitution of the United States, women are eligible to serve as jurors in all the courts of the Commonwealth of Pennsylvania.

*Statutes—Construction—Application of new cases and new subjects.*

6. Legislative enactments in general and comprehensive terms apply to new cases, and to new subjects that are created from time to time, and which come within their general scope and policy.

In re Opinion of the Justices (Mass.), 130 N. E. 685, distinguished.

Argued May 23, 1921. Appeal, No. 63, Jan. T., 1922, by plaintiff, from order of O. & T. Erie Co., May T., 1921, No. 39, making absolute rule to quash indictment, in case of Commonwealth v. Fred Maxwell et al. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Rule to quash indictment. Before ROSSITER, P. J.
The opinion of the Supreme Court states the facts.
Rule absolute. The Commonwealth appealed.

*Error assigned,* among others, was order, quoting it.

*C. Arthur Blass,* District Attorney, with him *Otto Herbst,* Assistant District Attorney, for appellant.—It seems to be the settled law in all states, that the qualifications of jurors are matters of legislative control, even though the qualifications laid down by the legislature

differ from those at the common law: In re Mana, 178 Cal. 213.

*John R. Haughney,* with him *Lytle F. Perry,* for appellees.—There is no law known to the Commonwealth, either express or implied, giving to women the right to serve upon either the grand or petit jury.

Women are not entitled to vote by virtue of the 14th or 15th Amendments to the Constitution of the United States: Van Valkenburg v. Brown, 43 Cal. 43; U. S. v. Reese, 92 U. S. 214; U. S. v. Cruikshank, 92 U. S. 542; Wood v. Fitzgerald, 3 Or. 568; U. S. v. Petersburg Judges, 14 Am. Law Reg. 105; In re Grilli, 179 N. Y. S. 795.

A trial by jury as heretofore means a trial by those answering the description set forth in the act of assembly: Smith v. Times Pub. Co., 178 Pa. 481.

OPINION BY MR. JUSTICE SCHAFFER, July 1, 1921:

In this case, the court below quashed an indictment, charging the defendants with murder, because a woman served on the grand jury which found the bill. The Commonwealth has appealed; and this brings before us the important question whether women are eligible as jurors in Pennsylvania.

It is conceded that, under the 19th Amendment to the Constitution of the United States, women are given the right to vote, and are therefore electors; but the oyer and terminer held that the provision of our Constitution (article I, section 6),—"Trial by jury shall be as heretofore and the right thereof remain inviolate,"—preserves in this State trial by jury as it existed at common law, and that neither the federal amendment nor its effect upon the Act of April 10, 1867, P. L. 62, providing for the selection of jurors, alters the ancient rule that men only may serve.

Let it be noted that what we are called upon to determine is the composition of juries, so far as the qualifica-

tions of jurors are concerned, not the conduct of trials before such a body, nor the kinds of cases which under the Constitution must be decided by that character of tribunal.

At the time the provision we are considering was placed in Pennsylvania's first Constitution, in 1776, justice had been administered in the Commonwealth according to English forms for about a century. Does the word "heretofore" refer to jury trials as conducted in England or in Pennsylvania? We find the method of selecting juries and the qualifications of jurors, at the time of the promulgation of this Constitution, September 28, 1776, was regulated in Pennsylvania and in England by legislation and not by the common law, in the latter country by the Act of 3 George II, c. 25; 3 Blackstone 361.

Under the laws of the Duke of Yorke, April 2, 1664, (Duke of Yorke's Book of Laws, 1682-1700, page 33), which were in force in Pennsylvania, it was provided, for the summoning of jurors, that the constable shall warn so many of the *overseers* to attend as jurymen and return their names to the under sheriff. It was also provided "No jury shall exceed the number of seven, nor be under six, unless, in special causes upon life and death, the justice shall think fit to appoint twelve." By an amendment (Duke of Yorke's Book of Laws, p. 69) it was provided, "In all cases to be tried by juries at the General Court of Assizes the number of jurors shall be twelve, but at the several Courts of Sessions the same number is sufficient as already in the law is set forth." "The Frame of Government of the Province of Pennsylvania," confirmed by the first provincial council May 5, 1682, provided: "Eighth. That all trials shall be by twelve men, and as near as may be peers, or equals, and of the neighborhood, and men without just exception" (Duke of Yorke's Book of Laws, 1682-1700, page 100). "The Great Law or the Body of Laws" of the Province of Pennsylvania passed at an assembly held in Chester, December

7, 1682, provided: "Chapter XXXVIII. That all trials in civil cases, shall be by twelve men, and, as near as may be, peers or equals and of the neighborhood, and men without just exception" (Duke of Yorke's Book of Laws, page 117). This law was abrogated by William and Mary in the year 1693. It was reënacted, however, the same year, June 1, 1693, by chapter 25 of "A Petition of Right" (Duke of Yorke's Book of Laws, page 199). From this review of the early statutes, it will be seen that the framers of the Constitution of 1776 knew that legislation determined the qualifications of jurors, not the common law, and, as will be hereafter demonstrated, specifically provided that this method should continue. After the promulgation of our first fundamental law, an act was passed, on March 19, 1785 (2 Statutes at Large 486), entitled "An Act for the better regulation of jurors," which provides (section 2) the sheriff shall summon "sober and judicious *persons* of good reputation and none other."

Following the adoption of the Constitution of 1790, the legislature provided the method by which jurors should be selected. By the Act of March 29, 1805, P. L. 183, chapter LXV, "An Act directing the mode of selecting and returning jurors," it was enacted, that "in each county of this Commonwealth the sheriff and county commissioners, or any two of said commissioners, with the sheriff, shall meet at the seat of justice at least thirty days previously to the first court of common pleas to be holden in each and every year, and shall then and there select, from the *list of taxable citizens,* the names of a sufficient number of sober and judicious persons, to serve as jurors at the several courts hereinafter mentioned." The Act of April 4, 1807, P. L. 124, contained the provisions, "It shall be the duty of the assessors of the several townships and districts within this Commonwealth, and of the assessors of the several wards in the City of Philadelphia, and of each borough, to return the *names of all the white male taxable citizens,* liable to

serve as jurors, of competent ability, understanding, and knowledge of the English language, to the county commissioners of their respective counties; and it shall be the duty of the county commissioners aforesaid, to deposit the names of the persons, so returned to them, in the proper wheels in proportion to the numbers requisite for each." The Act of February 13, 1816, P. L. 52, further regulated the subject; it says, "In each county of this Commonwealth, the sheriff and county commissioners, or any two of the said commissioners with the sheriff, shall meet at the seat of justice at least thirty days previously to the first court of common pleas to be holden in each and every year, and shall, then and there, select from the *list of taxable citizens,* the names of a sufficient number of sober, intelligent and judicious persons, to serve as jurors at the several courts to be held in each county, respectively, for that year." An examination of the Act of April 14, 1834, P. L. 341, "An Act relative to the organization of the courts of justice," shows that it regulated the whole subject of selecting jurors; section 85 provides that "The sheriff, and at least two of the commissioners of every county, shall, at least thirty days previously to the first term in every year of the court of common pleas of the respective county, meet, and thereupon proceed with due diligence to select, at the seat of justice thereof, *from the taxable citizens of the county,* a sufficient number of sober, intelligent and judicious persons, to serve as jurors in the several courts of such county in which juries shall be required to be holden therein during that year."

The Act of March 27, 1865, P. L. 779, entitled "An Act for the better and more impartial selection of persons to serve as jurors, in the several courts of Somerset, Bedford, Fulton, Westmoreland, Perry, Juniata Counties," required the election of two jury commissioners for these counties, repealed so much of any acts of assembly as made it the duty of the sheriff and county commissioners to select and draw jurors, and required

the jury commissioners to select "from the whole *male taxable citizens,* of the respective county, at large, a sufficient number of sober, intelligent and judicious persons, to serve as jurors, in the several courts of such county, during that year."

Under the Act of April 10, 1867, P. L. 62, section 2, (2 Purdon 2062, placitum 2), which expressly applies to each of the counties in the Commonwealth, except Philadelphia, the jury commissioners are required to select "from the *whole qualified electors* of the respective county, at large, a number," such as shall be designated by the court of common pleas, "of sober, intelligent and judicious persons, to serve as jurors in the several courts of such county during that year." The seventh section of this act exempts Philadelphia from its provisions. The statutory enactment which covers Philadelphia is section 2 of the Act of April 20, 1858, P. L. 354 (2 Purdon 2077, placitum 94) ; it sets forth : "That prior to the first day of December in each and every year, the receiver of public taxes of the said city shall lodge with the said sheriff, for the use of the said board [of judges], a duly certified list of *all taxable inhabitants of the said city,* setting out their names, places of residence and occupation; and, prior to the tenth day of December in each and every year, it shall be the duty of the said board, or a quorum thereof, to assemble together and select from the said list of taxables a sufficient number of sober, healthy and discrete citizens, to constitute the several panels of jurors, grand and petit, that may be required for service in the several courts for the next ensuing year, in due proportion from the several wards of the said city and the principal avocations."

It will thus be seen that since 1805, when the Constitution of 1790 was in force, the persons charged with the duty of jury service have been fixed, from time to time, by the legislature and have been "taxable citizens," "white male taxable citizens," "male taxable citizens," "taxable inhabitants" and "qualified electors." This fol-

lows the rule that the qualification of jurors and the manner of selecting them are usually by statute: 16 Ruling Case Law 235. "The mode of selecting electors for jury service has never been regarded as an essential element in the right of trial by jury. Different methods have been adopted and have prevailed at different times, as were best suited to local requirements; and so the method of selection is entirely within the control of the legislature, provided only that the fundamental requisite of impartiality is not violated": 16 Ruling Case Law 234. "It was not intended to tie up the hands of the legislature so that no regulations of the trial by jury .could be made......; all the authorities agree that the substantial features, which are to be 'as heretofore' are the number twelve and the unanimity of the verdict. ......The constitutional provision does not however go beyond the essentials of the jury trial as understood at the time. It does not extend to changes of the preliminaries, or of the minor details or to subsequent steps between verdict and judgment......The jury is above everything a practical part of the administration of justice, and changes of nonessential features, in order to adapt it to the habits and convenience of the people have therefore always been made without hesitation even in this country under the restrictions of the constitutions ......other changes, such as the qualifications of the jurors themselves, the vicinage from which they shall come, the mode of selecting and summoning them, the regulation of venires and notably even the matter of challenges have been held to be within legislative control": Smith v. Times Pub. Co., 178 Pa. 481, 499. "Jurors must possess the qualifications *which may be prescribed by statute"*: Bouvier's Law Dictionary (Rawle's 3d Revision) vol. 2, page 1774. "Subject to the constitutional provisions as to impairing the right of trial by jury, the legislature has power to define the qualifications of jurors. It may dispense with the freehold qualifications required by common law: Kerwin v. People, 96

Ill. 206; Com. v. Dorsey, 103 Mass. 412": Bouvier, page 1775. In Ex Parte Eban Mana, 172 Pacific 986, L. R. A. 1918E, it was held that a constitutional provision substantially to the effect that the right of trial by jury shall be secured to all and remain inviolate does not prevent the legislature from authorizing women jurors. The court said (L. R. A. page 772), "Qualifications of the jury is a matter subject to legislative control, and that, even though such qualifications may differ from those at common law, such legislation is nevertheless a valid exercise of legislative power." Passing upon the precise point that we are called upon to determine, the Supreme Court of Michigan, in The People v. Barltz, 180 N. W. 423, in which that court held the constitutional amendment giving women the right to vote, operated to make them eligible for jury service under a prior act of assembly providing that persons being citizens having the qualifications of electors were eligible for jury service, used this language (page 426) : "It seems to be the settled law in all the states, so far as we have been able upon examination to discover, that the qualifications of jurors are matters of legislative control, even though the qualifications laid down by the legislature differ from those at the common law......So long as the essential requisites of trial by jury are preserved, it is competent for the legislature to prescribe the necessary qualifications of jurors, and additional qualifications may from time to time be imposed by the legislature."

The qualifications of jurors at common law changed and varied. At an early period it was required that a juror should be possessed of some property as a qualification: Proffat on Jury Trials, section 115. At common law, jurors were required to be freeholders and the qualification continued by statute from the time of Henry V down to that of George II: 20 Amer. Law Register 437. The statute of the 2d Henry V, c. 3, requires jurors that pass upon a man's life to have forty shillings per annum freehold. At the time of the adop-

tion of Pennsylvania's first Constitution in 1776, there was a property qualification in England for all jurors: 3 Blackstone 362.

Just what was the common law right of trial by jury is somewhat difficult to determine and define. Certain it is that in England it was not, in 1776 when our first Constitution was adopted, the same as it had been in earlier times: Proffat on Jury Trials; Forsyth, Trial by Jury; History of the Jury System by Lesser. Magna Charta (1215 A. D.) provided, that no man should be deprived of life, liberty or property unless "by the lawful judgment of his peers and by the law of the land." While this has been popularly accepted as a guaranty of trial by jury, yet, such trials, in their present form, did not come into existence until some time later; and the phrase,—"lawful judgment of his peers and the law of the land,"—when used, meant nothing more than a guaranty of the right to trial according to one of the then existing modes,—by recognition, compurgation, combat, ordeal, witnesses and other forms then in vogue (Bigelow, Hist. of Proced. 155, n.; Taylor, Due Proc. of Law, sec. 4). In the words of Mr. Justice WILLIAMS in Smith v. Times Pub. Co., 178 Pa. 481, 506, "It simply protected Englishmen from the power of secret, irresponsible tribunals and conceded the jurisdiction of the legally established courts over all causes." The modes of procedure gradually changed, through the centuries which elapsed from the granting of King John's charter to the founding of the early English colonies in America; at the latter time trial by jury, substantially as we know it, had replaced the other forms.

That a wedding of modern society to the ancient jury system would not be tolerated is pointed out in Hurtado v. California, 110 U. S. 516, where, after referring to the various ancient modes of trial, it is said (page 530): "When we add to this that the primitive grand jury heard no witnesses in support of the truth of the charge to be preferred, but presented upon their own knowledge,

or indicted upon common fame and general suspicion, we shall be ready to acknowledge that it is better not to go too far back into antiquity for the best securities for our 'ancient liberties.' It is more consonant to the true philosophy of our historical legal institutions to say that the spirit of personal liberty and individual right, which they embodied, was preserved and developed by a progressive growth and wise adaptation to new circumstances and situations of the forms and processes found fit to give, from time to time, new expression and greater effect to modern ideas of self-government." The same idea finds expression in Twining v. New Jersey, 211 U. S. 78, 101, where it was said by Mr. Justice MOODY: "It does not follow, however, that a procedure settled in the English law at the time of the emigration, and brought to this country and practiced by our ancestors, is an essential element of due process of law; if that was so, the procedure of the first half of the 17th century would be fastened upon the American jurisprudence like a straight jacket, only to be unloosed by constitutional amendment."

A careful reading of the words of the section of the Constitution we are considering as it appeared in the Constitution of 1776 shows that it was not precisely similar to its present phraseology. As it first appeared it was "trials" not "trial" by jury shall be as heretofore and the section went on to say, "and it is recommended to the legislature of this State to provide by law against every corruption or partiality in the choice, return or appointment of juries." This first constitutional enactment on the subject indicates that what was to remain as theretofore was the "trials" of certain kinds of cases and the method of trial; they were to be by jury as theretofore, not by a judge alone, or by some other tribunal, and the trial itself was to be carried on as such trials had customarily been conducted; and, so far as the qualifications of the jurors were concerned, as the

latter clause of the section shows, they were to be, as they had been, matters for legislative regulation.

When the section was carried into the Constitution of 1790, it appeared in article IX, the declaration of rights, in its present form, "That trial by jury shall be as heretofore and the right thereof remain inviolate." It thus appears in the Constitution of 1838 and in the present Constitution. It is evident, however, that what was being guaranteed by these three subsequent instruments was the same thing spoken of in the Constitution of 1776, the right to a jury trial of certain kinds of cases and the method of trial, and not a rigid fixing of the mode of selecting jurors or their qualifications by past standards. If the qualifications of jurors can be fixed only by the Constitution, it is inconceivable that the right of the legislature, to determine what they shall be, has not been challenged from the foundation of our present state government until now.

Without feeling called upon to determine what other matters the word "heretofore" in the Constitution of 1873 refers to, we do say that when that instrument was adopted the uniform method of selecting jurors and determining their qualifications was by legislation, both here and in England. This was known to the framers of the first and all succeeding Constitutions, in the first being specifically recognized, and, in guaranteeing the right of trial by jury, it and all the others did not in any way limit the legislature from determining from time to time how juries should be composed.

We have then the Act of 1867, constitutionally providing that the jury commissioners are required to select "from the *whole qualified electors* of the respective county......persons to serve as jurors in the several courts of such county," and the 19th Amendment to the federal Constitution putting women in the body of electors. "The term 'elector' is a technical, generic term, descriptive of a citizen having constitutional and statutory qualifications that enable him to vote, and including

not only those who vote, but also those who are qualified yet fail to exercise the right of franchise": 20 Corpus Juris 58. If the Act of 1867 is prospective in operation, and takes in new classes of electors as they come to the voting privilege from time to time, then necessarily women being electors are eligible to jury service. That the Act of 1867 does cover those who at any time shall come within the designation of electors there can be no question. "Statutes framed in general terms apply to new cases that arise, and to new subjects that are created from time to time, and which come within their general scope and policy. It is a rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview and scope coming into existence subsequent to their passage": 25 Ruling Case Law 778.

Summing up, we conclude, (1) there was no absolute and fixed qualification of jurors at common law, and from very ancient times their qualifications were fixed by act of parliament; (2) the qualification of jurors was not the thing spoken of by the section of the Constitution under consideration; (3) the words "as heretofore" in that section refer to the kinds of cases triable before juries and the trial, not the qualifications of the jurors; (4) the designation "qualified elector" embraces all electors at the time jurors are selected from the body of electors; (5) the term "electors" embraces those who may be added to the electorate from time to time.

While it is true the Supreme Court of Massachusetts, in giving an advisory opinion to the legislature of that state (In re Opinion of the Justices, 130 N. E. R. 685) recently determined that, under its constitution and existing statutes, women are not liable to jury duty, yet the opinion in question holds, as we do, that the qualification of jurors is a matter not constitutionally fixed but within the control of the legislature, and that the general assembly of that state is authorized to make a

change in the statutory law upon the subject, so as to render women liable to jury duty. The only difference between their conclusion and the one reached by us is that we hold our existing legislation sufficient in itself to meet the situation while they think a further statute is required. Had the Massachusetts legislation been similar to that in Pennsylvania, which is not the case, their conclusion might possibly have accorded with ours; but, however that may be, the decision under discussion is in no sense binding upon us, notwithstanding the high respect in which we hold the tribunal which rendered it.

The pending case calls for the immediate decision only of the right of women to serve as jurors in those counties which are covered by the Act of 1867. We entertain no doubt, however, that women are eligible to serve as jurors in all the Commonwealth's courts.

The order quashing the indictment is reversed, and the indictment is reinstated with direction to the court below to proceed with the trial of the defendants in due course.