## Commonwealth v. Zell and Herr, Appellant.

*Criminal law — Jurors — Qualifications — Women as jurors — Omission of women—Act of April 10, 1867, P. L. 62.*

Motions to quash an indictment, and the array of grand jurors, and the array of petit jurors, were properly overruled where the reason assigned in support of each motion was that women were not included among jurors selected for service in the several courts of the county for the year 1921.

The Act of April 10, 1867, P. L. 62, does not accord to a defendant to be tried by a jury of a particular class, nor has he a right to any particular person or persons on the jury, nor to any particular set of men from whom his jury is to be chosen.

As there was no prejudice alleged or shown in the action of the jury commissioners the appellant was not injured by the fact that no women were chosen to serve as jurors that year.

*Criminal law and procedure—Motion to quash array of jurors—Delay—Juror—Preliminary examination.*

A motion to quash the array of jurors should be made as soon as the facts which warrant it are known. As the defendant had an opportunity to learn as soon as he was indicted what names of jurors were in the jury wheel, it may well be doubted whether he could be heard to raise the question after waiting from the November to the January term.

It was not error for the trial court to refuse permission to ask a juror whether any members of his family were stockholders in a certain bank where it does not appear to have been a material matter and where it does not appear that the defendant was prejudiced in any way.

Argued November 15, 1922. Appeal, No. 142, Oct. T., 1922, by Frank E. Herr, from judgment of Q. S. Lancaster County, November Sessions, 1921, No. 45, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Charles D. Zell and Frank E. Herr. Before PORTER, HENDERSON, TREXLER, KELLER and GAWTHROP, JJ. Affirmed.

Indictment for conspiracy. Before LANDIS, P. J.

The appellant, Frank E. Herr, was indicted with Charles D. Zell for conspiracy to cheat and defraud. Zell was treasurer, and Herr his assistant, of the Agricultural Trust Company which became insolvent in 1921. The chief cause of insolvency was the embezzlement of large sums of the bank's funds by Zell. Zell pleaded guilty and nolo contendere to fourteen counts and was sentenced. Herr was convicted with recommendation to the mercy of the court.

Judgment of sentence having been passed upon the verdict this appeal was taken by Frank E. Herr.

*Errors assigned* were refusal to quash the indictment, refusal to quash the array of jurors, refusal to direct a verdict of acquittal, and various rulings on evidence.

*John A. Coyle,* and with him *K. L. Shirk,* for appellant.—The motions to quash the array of jurors were not

too late, the challenge may even be raised upon appeal: Commonwealth v. Smith, 4 Pa. Superior Court, 1; Commonwealth v. Zuern, 16 Pa. Superior Ct. 588; Commonwealth v. Mullin, 65 Pa. Superior Ct. 365.

It is illegal to discriminate against women in filling jury panels and a jury drawn from a panel not containing the names of any women is illegal: People v. Manuel (Cal.) 182 Pac. 306; State v. James, (N. J.) 114 Atl. 553; In re Opinion of Justices (Mass.), 130 N. E. 685; People v. Barltz, (Mich.) 180 N. W. 423; Neal v. Delaware, 103 U. S. 370; Commonwealth v. Maxwell et al., 271 Pa. 378.

A juror may be questioned on any matter which will show his incompetency for the purpose of using peremptory challenges: Commonwealth v. Marion, 232 Pa. 418; Commonwealth v. Grauman, 52 Pa. Superior Ct. 215.

*S. V. Hosterman,* Assistant District Attorney, and with him *W. C. Rehm,* District Attorney, and *H. Edgar Sherts,* for appellee.—A motion to quash the array should be made as soon as the facts that warrant it are known, and it is too late after the discharge of the grand jury: Commonwealth v. Haines, 57 Pa. Superior Ct. 616; Wallace v. Jameson et al., 179 Pa. 98.

OPINION BY HENDERSON, J., March 2, 1923:

The appellant was the assistant treasurer of the Agricultural Trust Company of Lancaster, and after the failure of that institution was indicted for conspiracy to defraud Charles Ream and the Agricultural Trust Company. Motions to quash the indictment and to quash the array of grand jurors and the array of petit jurors were overruled, and this action of the court is the subject of the first, second and third assignments of error. The reason assigned in each of the motions was the omission of the jury commissioners to include women among the jurors selected for service in the several courts of the county for the year 1921. It was conceded

that no names of women appeared in the jury list for that year and this the defendant contends was a denial of his statutory right to a jury selected alternatively from the whole qualified electors of the county at large as provided by the Act of April 10, 1867, P. L. 62. The proposition urged is that the language of the act makes it obligatory on the jury commissioners to select from all classes of competent persons, and that this necessarily requires that women be included among the jurors selected in any year. It is not shown that the names of women were omitted from the jury list from considerations of prejudice or preference, nor is it contended that the jury selected was not composed of qualified persons. The presumptions are therefore that all the jurors selected were qualified electors of the county; that they were sober, intelligent and judicious persons; that they were selected from the whole county; and that they were therefore free from local influence or prejudice. In selecting persons for such service, the commissioners are not presumed to be personally acquainted with all of those eligible for jury service; they must secure information therefore which they deem trustworthy with respect to the qualifications of those to be chosen. This necessarily involves the exercise of judgment and permits a large discretion on the part of the commissioners in choosing the persons for such service. They are not required to select alternately from the assessment roll or the poll list of each district to make up the desired number. They need only secure a proportionate representation from the various districts and select the requisite number of persons qualified as prescribed in the statute. As there are many more qualified persons than are required in any year for jury service, it necessarily follows that the names of a large majority of those eligible must be excluded. It does not at all follow that such exclusion is prejudicial, or that the operation of a statute is perverted through the method adopted. If a selection of qualified persons is

made from the whole qualified electors, a defendant alleging irregularity in the filling of the jury wheel should show that he has lost some right, or been subjected to some disadvantage resulting in an unfair trial before he can be heard to complain. The provision with reference to the selection of jurors is directory in character. It would be impracticable to lay down a definite rule by which selection of each name should be made. The spirit of the law is that every person shall be entitled to a fair trial before a capable and unprejudiced jury. It is not accorded to a defendant however to be tried by a jury of a particular class, nor has he a right to any particular person or persons on the jury, nor to any particular set of men from whom his jury is to be chosen: Com. v. Payne, 205 Pa. 101. As there was no prejudice alleged or shown in the action of the jury commissioners of the county, the appellant was not injured by the fact that no women were chosen to serve as jurors that year. There were of course many eligible persons in the county who were not summoned; doubtless there are many such who never served as jurors, but it is not a valid challenge of the integrity of the array that many competent persons were overlooked. It was probably the case that the commissioners were in doubt as to the qualification of women to serve as jurors as a result of the adoption of the 19th amendment. There was a difference of opinion among judges and lawyers on that subject until the determination of the question by the Supreme Court in Com. v. Maxwell, 271 Pa. 378. If the commissioners in view of this uncertainty deemed it wise to select for jury service for that year persons whose qualifications were not doubtful, we are unwilling to say that such exercise of discretion was unlawful and that as a consequence the jurors selected for that year were chosen in violation of law.

It becomes unimportant therefore to consider the question whether the motions to quash the array of grand jurors was made in time. There is merit in the

conclusion of the court that the motion came too late. The indictment was found at the November sessions and the case was continued on the application of the defendant to the January sessions. The grand jury had in the meantime been discharged. The 3d section of the Act of March 18, 1874, P. L. 46, which is a supplement to the Act of April 10, 1867, directs that a certified list, containing the name of every person in the jury wheel, shall be filed of record in the office of the prothonotary of the court of common pleas of the county. As there is no evidence to the contrary we must assume that this direction was followed by the jury commissioners. The defendant therefore had an opportunity to ascertain the fact that no women were named as jurors for that year and the motions to quash should have been made promptly. A motion to quash the array of jurors should be made as soon as the facts which warrant it are known: Wallace v. Jameson, 179 Pa. 98; Com. v. Haines, 57 Pa. Superior Ct. 616. As the defendant had an opportunity to learn as soon as he was indicted what names of jurors were in the jury wheel, it may well be doubted whether he could be heard to raise the question after waiting from November to the January term. We have based our conclusion, however, on the general question of the lawful performance of their duty by the jury commissioners.

Complaint is made that the court refused to permit a juror to be asked whether any members of his family were stockholders of the Agricultural Trust Company. This question was overruled by the court. We think there was no error in this action. The company named was not the prosecutor, and the relation of members of the juror's family to the bank does not appear to have been a material matter affecting the juror. The preliminary examination of the jurors seems to have been full and they all disclaimed personal interest or previous opinion or prejudice. · It is not claimed that any juror on the panel was related to any stockholder or that the question

if permitted would have developed the fact that some member of the family of the juror was a stockholder. The defendant was not therefore prejudiced in any way.

The next principal contention is that the court should have given binding instructions for the defendant or made absolute the rule in arrest of judgment because there was not sufficient evidence to warrant the jury in finding a conspiracy had existed between the defendant and Zell. We have carefully examined this assignment, but are not convinced that it clearly appears there was no evidence for the jury. The trial judge in reviewing the record thought it clear that the facts developed at the trial presented a question of fact. His conclusion on that subject is supported by the testimony of witnesses and the admissions of the defendant himself as to transactions, from which an inference of coöperation with Zell might be drawn. On the whole evidence therefore, the case was not so clear that the court could properly say to the jury they should not convict.

We have examined the other assignments, but do not consider that they should be sustained. The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.