DENNIS J. FLYNN, Corporation Counsel, Racine County
You request my opinion on two questions concerning the relation between the recently adopted Twenty-Sixth Amendment to the United States Constitution and the law of Wisconsin relating to the qualifications of jurors. Your first question asks:
"Are individuals who are 18, 19 or 20 years old to be accorded the high privilege and obligation of serving on juries under Wisconsin Law?"
The qualification of jurors for Wisconsin courts is set forth in sec. 255.01, Stats., which provides as follows:
"Persons (1) who are citizens of the United States, (2) Who areelectors of the state, shall be liable to be drawn as grand orpetit jurors." (Emphasis added)
The Twenty-Sixth Amendment to the Federal Constitution, which was ratified by the requisite number of states on June 30, 1971, provides as follows:
"SECTION 1. The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.
"SEC. 2. The Congress shall have power to enforce this article by appropriate legislation."
The Nineteenth Amendment, which automatically negated state constitutional and statutory provisions restricting the right of women to vote, has generated a significant body of case law which I feel is most useful, by way of analogy, in specifically responding to your first question. Just as in the instant case, the advent of voting rights for women raised questions as to whether *Page 139 
the federal constitutional amendment also formed the vehicle by which those who were newly franchised would be entitled to or required to sit upon juries. Neither the Nineteenth Amendment nor the Fourteenth Amendment to the United States Constitution prohibits a state from prescribing qualifications of jurors including those which limit the selection of jurors to males. See 157 A.L.R. 461 and 9 A.L.R. 2d 661. However, the greater number of the state courts, which have considered the question, have held that, where the principal qualification of a juror was that he be an elector, the extension of the franchise to women under the Nineteenth Amendment had the effect of making them eligible as jurors. As stated in 47 Am. Jur 2d, Jury, sec. 104, at page 714:
". . . although a contrary conclusion has been reached in some jurisdictions, where the primary qualification of a juror is that he be an elector, the majority view is that the conferring upon women of the right of suffrage also makes them eligible as jurors. . . ."
Section 255.01, Stats., is quite similar in its terms to those statutes considered by the various courts which have treated the question as to whether changes in the law, including theNineteenth Amendment, made women eligible as jurors by virtue of their newly acquired status as electors. As pointed out previously, however, the courts are divided as to the effect of the Nineteenth Amendment. Once it is established that status as an elector is central to the determination whether a citizen may be a juror, the attitude of the various courts as to the effect of the Nineteenth Amendment appears to be largely governed by which of two competing rules of statutory construction or constitutional interpretation the particular court feels properly reflects the law of the state involved.
A minority of the courts hold that women are not eligible as jurors, despite the fact that the state statute, setting forth the qualifications of jurors, indicates that jurors are to be chosen from electors because, prior to the adoption of theNineteenth Amendment or a similar state enactment, the statute defining an "elector" referred to male persons only. These courts apply the rule of statutory construction which provides that the statutes setting forth juror qualifications are to be construed to mean what *Page 140 
the legislature intended at the time of their passage, without reference to the future. See cases cited in 50 Am. Jur.,Statutes, sec. 236, page 224; 157 A.L.R. 461, 474.
On the other hand, the majority of the courts have refused to accept the proposition that their legislature intended such a restrictive application of their law relating to jury qualifications. Generally speaking, these courts hold that, once a woman becomes an elector by virtue of an extension of the franchise, she has been placed in the class, i.e., electors, from which jurors are to be selected under statute and she is, therefore, entitled to perform jury duty on the same basis as men. See cases cited in 157 A.L.R. 461, 472. One of the better expressions of this position is found in Commonwealth v. Maxwell
(1921), 271 Pa. 378, 114 A. 825, 16 A.L.R. 1134, where the court states, at page 829:
"We then have the act of 1867, constitutionally providing that the jury commissioners are required to select `from the whole qualified electors of the respective county * * * persons, to serve as jurors in the several courts of such county,' and theNineteenth Amendment to the federal Constitution, putting women in the body of electors.
"* * *
"If the act of 1867 is prospective in operation, and takes in new classes of electors as they come to the voting privilege from time to time, then, necessarily, women, being electors, are eligible to jury service. That the act of 1867 does cover those who at any time shall come within the designation of electors there can be no question."
See also 50 Am. Jur., Statutes, sec. 230, page 217. This was also the position taken by the Attorney General of Wisconsin in two 1921 opinions which advised that women stood on the same footing as men in the matter of eligibility for jury service. 10 OAG 369 (1921); 10 OAG 15 (1921).
In my opinion, of the two positions taken by the several state courts which have considered the question of the effect of theNineteenth Amendment on the eligibility of women, as electors, to act as jurors, the view expressed by the majority is by far the more natural and preferable rule to apply, by way of analogy, to *Page 141 
resolve the question as to the effect of theTwenty-Sixth Amendment on the eligibility of 18-year-old citizens to act as jurors. While I obviously cannot predict with certainty which view would appear most convincing to our Supreme Court, I do question whether the court would conclude that the legislature intended the rigid interpretation of sec. 255.01, Stats., which would be required by adherence to the minority rule. In direct response to your question, then, it is my opinion that, since individuals who are 18, 19 or 20 years old are now electors, they must be included within that class of citizens from which jurors are chosen for service in the courts of our state.
Your second question asks:
"If 18, 19 and 20 year olds are to serve on jury panels should the now existing panels be recalled and there be an immediate creation of new panels."
The manner in which petit jurors are to be selected is set forth in secs. 255.04 to 255.07, Stats. Grand jurors are selected by a somewhat similar process. Sec. 255.10, Stats. Since I assume your question is intended to relate more specifically to existing panels of petit jurors, I will treat that aspect of your question first.
Section 255.04, Stats., provides, in part, as follows:
"Petit jurors; lists; number; how drawn. (1) Petit jurors for all circuit and county courts when exercising civil or criminal jurisdiction shall be drawn and obtained as prescribed in ss.255.04 to 255.07.
"(2) (a) The commissioners shall annually before the firstMonday in April provide for each court covered by sub. (1),unless the judge or judges thereof otherwise order, one list of not less than 300 nor more than 1,000 names of persons to be drawn from the county and apportioned as nearly as practicable among towns, villages and wards of cities thereof in proportion to population according to the last national census, to serve aspetit jurors. The commissioners may revise said list by striking from it the names of persons found by them to be ineligible for jury service, and add thereto the names of additional persons as *Page 142 provided in s. 255.05. Such list shall be certified by thecommissioners as having been prepared in strict conformity withthe statutes thereto appertaining. (Emphasis added)
"* * *
"(5) If any person whose name appears on a regular or reserve-panel list is not impaneled and sworn on voir dire as a juror at the term for which drawn the card containing the name of such person shall be returned to the tumbler by the clerk at the end of the term and the jury commissioners shall be notified thereof.
"(6) The judges of the circuit and county courts (or the senior judges thereof in the case of courts having more than one judge) may by joint order direct that the jury lists, panel lists, and reserve-panel lists of their respective courts, or any one or more of such lists, be combined into one or more lists, and that the number of names on the combined list be as specified in the order. . . ."
Section 255.05, Stats., provides, in part, as follows:
". . . Whenever the list of names furnished any such court has been depleted the commissioners shall supply other names so that there will not be less than 150 nor more than 1,000 names in the tumbler at the time any drawing of jurors takes place. Such names shall be written on cards which shall be placed in envelopes and put into the tumbler as hereinbefore provided."
Section 972.01, Stats., makes most of the statutes relating to the summoning, impaneling and qualifications of jurors in civil action applicable to criminal actions.
As previously discussed, the method used in each state to draw jurors is basically a matter within the discretion of each state legislature. Thus, in McKissick v. State (1971), 49 Wis.2d 537,182 N.W.2d 282, at page 543, our court states the following in reference to the process of jury selection in Wisconsin:
"States are permitted to decide for themselves the method to be used in the empanelling of jurors, and the method selected will not be tampered with provided it meets constitutional requirements. (Brown v. Allen (1953), 344 U.S. 443, 73 S.Ct. 397,97 L.ed. 469). The jury in this case was selected pursuant to *Page 143 
sec. 255.04, Stats., which method has previously been examined and approved by this court as constitutionally proper. (State v.Bond (1969), 41 Wis.2d 219, 163 N.W.2d 601)."
Section 255.04, Stats., establishes the basic framework of our petit jury selection system. Essentially, this system provides for annual certifications of jury lists each spring for the use of circuit and county courts during the ensuing year. In the event the list of names initially certified becomes depleted, the jury commissioners may add the names of additional persons to the list as provided in sec. 255.05, Stats.
Therefore, as I understand your second question, does theTwenty-Sixth Amendment, together with other constitutional provisions guaranteeing fair and impartial jury trials, require jury commissioners to discard the lists initially certified to the courts in the Spring of 1971 and initiate the process anew by certifying a new list prior to the next annual certification in the Spring of 1972. In my judgment, such action is neither required nor justified.
The Sixth and Fourteenth Amendments of the United States Constitution, as well as Art. I, sec. 7, Wis. Const., require that the criminally accused be afforded trial by an "impartial jury." Therefore, where the constitutional rights of a defendant are affected by the intentional and systematic exclusion from a jury of an identifiable group in the community which may be subject to prejudice, his conviction will not be allowed to stand. McKissick v. State, supra, page 542. However, as pointed out by our court in State v. Holmstrom (1969), 43 Wis.2d 465,471, 168 N.W.2d 574, the defendant challenging the jury array has the burden of establishing a prima facie case of discrimination and the burden does not shift to the prosecution until the defendant makes such a presentation. See also State v. Bond,supra, page 226.
In State v. Holmstrom, supra, at pages 472-473, the general tests to be applied, where a defendant challenges the validity of the jury array on the basis of discrimination, were reviewed and discussed in reference to a challenge based specifically on an alleged systematic exclusion of "young people." In the Holmstrom
case, the court said: *Page 144 
"We conclude from the cases cited above that to succeed on a challenge to the jury array the defendant must show:
(1) A systematic exclusion;
(2) Of some representative unit of citizens.
A systematic exclusion can be shown by the direct testimony of the jury commissioners or by proving a disproportionate representation of a unit of citizens on the jury array over a period of time.
"As far as defining what amounts to a cohesive unit of citizens, the United States Supreme Court has held that there should be no systematic exclusion of any
"`. . . economic, social, religious, racial, political . . . (or) geographical groups of the community . . . .' Thiel v.Southern Pacific Co. (1946), 328 U.S. 217, 220, 66 Sup.Ct. 984,90 L.Ed. 1181.
"* * *
"We find no authority with reference to the systematicexclusion of young persons as prohibited discrimination.Nonetheless, we think systematic discrimination in regard to agewould render the jury array just as defective as any other typeof systematic discrimination. Within these guidelines then it is necessary to review the proof this defendant introduced in his challenge to the array." (Emphasis added)
The mere lack of proportional representation on a jury panel does not imply a systematic exclusion or discrimination.McKissick v. State, supra, page 543.
Presumably, most of the jury panels currently in use were properly drawn from lists certified prior to the ratification of the Twenty-Sixth Amendment, when the minimum age of electors under Wisconsin law was 21. Therefore, the absence of 18-, 19- and 20-year-old persons on jury lists may well be a result of prior requirements of the law rather than an improper exclusion of persons of those ages based on considerations of prejudice or preference. *Page 145 
Furthermore, I have been unable to find any legal basis for the conclusion that persons 18, 19 and 20 years of age constitute a "representative unit of citizens," the exclusion of which would necessarily defeat the constitutional requirements of an impartial and representative jury. In fact, in United States v.Kuhn (5th Cir. 1971), 441 F.2d 179, the court indicated that a group of young citizens, having a comparable range of ages, did not constitute an identifiable or distinctive class of prospective jurors, the exclusion of which would result in a jury which failed to adequately represent a fair cross section of the community. In this case, the defendants alleged that a failure to supplement the jury selection system from time to time resulted in the systematic exclusion of the very youngest of the voting public, since persons becoming 21 years of age, during the period of several years the "master jury wheel" would be in use, would not be considered for jury service until it again became necessary to choose jurors to refill the wheel. The court states the following, at page 181:
"The burden is on defendants to make a prima facie showing of the existence of discrimination or exclusion of a district group from jury participation. (cases cited) Appellants have failed to carry their burden. There is nothing in the record to show that registered voters who had attained voting age between the time the `Plan' became effective and the time of the proceedings below were recognizable as a class. There is nothing identifiable or distinctive about young adults in the age range of 21 to 23 to set them apart from young adults aged 23 and over who were eligible for jury duty at the time in question."
Likewise, the courts normally will allow reasonable periods for orderly transition to occur within the framework of the existing jury selection process. For instance, in Ray v. The Lake SuperiorTerminal Transfer R. Co. (1898), 99 Wis. 617, 75 N.W. 420, the method to be used by the clerk of court to obtain jurors for a term of court had been changed before the time of the commencement of the term and the time of trial, but the clerk had already drawn jurors under the old method. In dismissing the challenge to the array of jurors, the court stated, at page 619:
". . . When jurors have been drawn and designated according to law to serve at a term of court, a mere change in the method of obtaining jurors, thereafter made, will not affect those already *Page 146 
drawn, but they will continue, notwithstanding such change in the law, legal jurors for the term unless excused or discharged by the court. "
Our court has also refused to hold that a jury selection process was improper simply because a temporary disparity in the proportion of electors between wards might exist from time to time because names supplied periodically were not drawn from all of the political subdivisions at once. See State v. Bond, supra, pages 227-228.
Finally, at least one court has indicated that where a change in the law raises doubt as to the eligibility of certain persons for jury duty, but no showing is made that the exclusion of these qualified persons by the jury commissioners resulted from "considerations of prejudice or preference" or that the defendant was thereby subjected to a disadvantage resulting in an unfair trial, the court will not disturb such a temporary exclusion of certain members of the community who are qualified for jury service. In that case, Commonwealth v. Zell Herr (1923),81 Pa. Super. 145, the court was considering the omission of women from the jury lists where the statutes required that jurors be selected "from the whole qualified electors" of the county. At page 149, the following is stated:
". . .It was probably the case that the commissioners were in doubt as to the qualification of women to serve as jurors as a result of the adoption of the 19th amendment. There was a difference of opinion among judges and lawyers on that subject until the determination of the question by the Supreme Court in Com. v. Maxwell, 271 Pa. 378. If the commissioners in view of this uncertainty deemed it wise to select for jury service for that year persons whose qualifications were not doubtful, we are unwilling to say that such exercise of discretion was unlawful and that as a consequence the jurors selected for that year were chosen in violation of law."
As pointed out previously, the Twenty-Sixth Amendment was not ratified by the required number of states until June 30, 1971, at least three months after the annual selection of jury lists in Wisconsin, as established by sec. 255.04 (2) (a), Stats. Obviously, therefore, the lists of persons submitted by the jury *Page 147 
commissioners to serve as petit jurors under the provisions of that statute only included persons 21 years of age or older, since the limited franchise which 18-year-old citizens had previously gained, by virtue of Title III of the Federal Voting Rights Act Amendments of 1970, was confined to federal elections and could not reasonably have been interpreted as having the effect of qualifying such persons as "electors of the state" within the broader meaning of the term as used in sec. 255.01, Stats. In view of these circumstances, it is my opinion that, despite the subsequent ratification of theTwenty-Sixth Amendment, such list or lists may be continued in use for the drawing of juries until the next annual lists are certified by the commissioners, prior to the first Monday in April, 1972. At that time, of course, the new lists must consist of persons drawn from a cross section of the community which does not exclude qualified young electors 18 years of age and older. In the interim, prior to the certification of such new lists, whatever,additions, to the current lists may be required under sec.255.05, Stats., should be drawn from a class which does not exclude consideration of 18-, 19- and 20-year-olds as potentially eligible jurors.
Obviously, most of the legal considerations previously noted apply equally to the selection of jurors for a grand jury list. However, since grand jurors only serve during the current term of court, unless the judge orders them to continue during the following term, a number of instances may exist where new jury lists have been made during the course of the year. Sec. 255.10
(6), Stats. Where any lists were drawn subsequent to the ratification of the Twenty-Sixth Amendment, they should have been drawn in such a manner as would not systematically exclude qualified young people 18 years of age and older. However, even if the jury commissioners failed to consider these newly enfranchised electors in the selection of grand jurymen, such an irregularity would probably be disregarded by the courts unless it appeared probable, in an individual case, that the person seeking to take advantage thereof was prejudiced thereby and thus denied an impartial jury. Pamanet v. State (1971), 49 Wis.2d 501,509, 182 N.W.2d 459; Petition of Salem (1939), 231 Wis. 489,491, 286 N.W. 5; Ullman v. State (1905), 124 Wis. 602, 609,103 N.W. 6. As our court stated most recently in the Pamanet case,supra, at page 509: *Page 148 
". . . However, the general rule is that statutes prescribing the mode of drawing a jury panel are directory, and irregularities in carrying out such provisions are not material unless the defendant is prejudiced thereby, and that is the rule followed in this state. . . ."
RWW:JCM