JOHN RANDALL & another *vs.* JAMES M. B. H. KEHLOR & others.

*Jury trial—statute requiring defendant to pay jury fee to secure, constitutional—waiver of. Custom—parol evidence admissible to prove. Agent to sell—may warrant.*

Pub. Laws of 1868, c. 151, § 6,* providing that 'the party demanding a jury shall pay the jury fee, and tax the same in his costs, if he prevail,' is not in contravention of Art. I. § 20, of the constitution of this State.

When a defendant in the superior court has demanded a jury, but declines to pay the jury fee, he thereby waives his right to a jury trial.

When a case in the superior court is tried by the presiding justice without the intervention of a jury, his findings of fact are conclusive.

Parol evidence is admissible to prove a custom among flour merchants in the place where it is sold on commission, whereby the vendee may rescind the sale and return the flour within ten days, if it prove to be unsound or damaged.

In such case the commission merchant to whom the damaged flour is returned in accordance with the custom, and who afterwards sells it as unsound, at its full real value, without laches on his part, may recover from his consignor the amount of the actual loss by such sale.

*It seems,* that in the absence of restrictions from his consignor, a commissioned flour merchant has the authority to warrant the quality and condition of flour sold by him.

* Jury fees were repealed by Pub. Laws 1873; c. 123.

ON EXCEPTIONS to the ruling of *Lane*, J., of the superior court for this county.

ASSUMPSIT to recover $417.16, loss on flour, sold by the plaintiffs on commission.

The defendants appeared at the return term, and, within the time prescribed by the rules, filed their plea of the general issue, and indorsed thereon the words, ‘Defendants demand jury trial,’ at the same time saying to the clerk that the defendants had no money, and should not pay the jury fee of seven dollars. The case was thereupon placed upon the list of cases to be tried by a jury. When the case was in order for trial, the clerk demanded the jury fee, which the defendants declined to pay, and demanded a trial by jury without the payment of the fee. The presiding justice ruled that the defendants were not entitled to a jury trial except upon the condition that they would first pay to the clerk the jury fee, and thereupon ordered the case to be transferred to the list of cases to be tried by the judge of the superior court without the intervention of a jury; and the defendants alleged exceptions.

Thereupon the case was tried by the judge without the intervention of a jury.

The judge made the following report of the case:

I find as facts,—

1. That the plaintiffs were commission merchants doing business at Portland, Me., and the defendants were flour manufacturers or millers, doing business at St. Louis, Missouri.

2. That on or about the 20th of April, 1871, defendants shipped to the plaintiffs five hundred barrels of flour, to be sold by them on commission; that two hundred barrels of the five hundred were of the brand called the Conqueror.

3. That on the 12th of May, 1871, plaintiffs made a sale of the two hundred barrels of the Conqueror to D. B. Ricker & Co., four merchants at said Portland, for $7.75 per barrel, and warranted the same to be good sound flour, and the same day delivered a part of the flour to the said Ricker & Co.

4. That on the 15th day of May, plaintiffs rendered an account

of the said sale to defendants, in which they charged themselves with the sum of $1550 for the sale of the said flour, and charged their commissions to defendants, and drew on the defendants for a small balance to square the account, which draft defendants paid.

5. That on the 19th of May, 1871, a few days after they rendered the said account to defendants, Ricker & Co. notified plaintiffs that the flour was musty and unsound, and was not such flour as they bought, and requested plaintiffs to take it back.

6. That plaintiffs took back 180 barrels of the flour, and shipped it to Boston, where it was sold for unsound and musty flour, and paid Ricker & Co. the loss sustained by them on twenty barrels which they had sold to their customers in the country.

7. That at the time of said sale to Ricker & Co., said flour was musty and unsound; that there is no market for unsound flour in Portland, but there is a market for it in Boston.

8. That the amount actually realized by the plaintiffs on said sale to Ricker & Co. was $417.16 less than said $1550, and plaintiffs actually lost on account of said sale $417.16.

9. That Ricker & Co. notified the plaintiffs that the flour was unsound within ten days after said sale, and returned the flour to plaintiffs within that time.

10. That in the case of the flour and disposing of the same, the plaintiffs acted for the best interests of the defendants, and were guilty of no laches in the premises.

11. That at the time of the sale it was the custom of commission merchants in Portland to sell flour by samples.

Several witnesses, called by the plaintiff, testified against the seasonable objection of the defendants,—

That they had been commission merchants in Portland from twelve to thirty years; that it was the custom and usage among the flour merchants of Portland, if within ten days after the sale of flour it proves unsound, it is no sale, and the vendee has the right to rescind the sale.

If this testimony was admissible, then I find as a fact, that it is the custom and usage among the flour merchants of Portland, if

within ten days after sale flour proves musty and unsound, it is no sale, and the vendee has the right to rescind the sale and return the flour. And I rule as matter of law,—·

1. That the flour proving unsound, and being returned within ten days after delivery, it was no sale by plaintiffs to D. B. Ricker & Co.

2. That plaintiffs being guilty of no laches in the premises, and the flour proving unsound, the defendants should bear the loss sustained in the sale of it.

The judge rendered judgment for the plaintiffs for $417.16 and interest from the date of the writ, and the defendants alleged exceptions.

*L. B. Dennett*, for the plaintiffs.

*Geo. C. Hopkins*, for the defendants, contended that

They were entitled to a jury trial without the payment in advance of the jury fee. Sec. 6, c. 151, Acts of 1868, if it makes such prepayment a condition without which a defendant cannot obtain a trial by jury is unconstitutional.

The constitution of Maine, Art. 1, § 20, gives the right absolutely and without condition to all parties in all controversies concerning property except in cases when it had heretofore been otherwise practiced.

In *Saco* v. *Wentworth*, 37 Maine, 173, the opinion of the court establishes the positions, that trial by jury is a right which the legislature cannot impair directly or indirectly, and that any act which renders it difficult to obtain, or requires conditions for the purpose of preventing such trial is opposed to the spirit of the constitution, and void because it indirectly impairs the right.

No public necessity is shown to exist calling for this provision in the act establishing the superior court, so it cannot be sustained upon that ground.

It certainly has the effect of preventing jury trials, and is a condition more directly tending to that end than the condition pronounced void in the case cited.

Randall *v.* Kehlor.

The cases, where it has been otherwise practiced, excepted in the constitution from the general grant of the right of jury trial are chancery suits, etc., where courts, when no jury was employed, had jurisdiction before the constitution was adopted. Such jurisdiction was not affected by the constitutional provision.

By uniform practice a defendant has always had the right of jury trial. It has never been otherwise practiced.

If it be said that plaintiffs have been required to pay the jury fee in advance, and the correctness of the practice never questioned, and as the constitution gives the right equally to both parties, it will therefore follow that the same prepayment may be required of a defendant, the answer is plain.

A *nisi prius* practice (for it lacks the authority of any reported case) is an insufficient basis for attaching a condition to a constitutional right. If it is, the principle ought to be carried no further than its actual application.

But there is no analogy between the position of a plaintiff and that of a defendant. The plaintiff complaining of a wrong and seeking a remedy asks the services of officers, court and jury, and assumes the burden of proving facts sufficient to make out his case before the constitutional tribunal. The defendant, however, assumes no burden and seeks no forum. His position is entirely negative.

A worthless plaintiff may sue a responsible defendant upon an unfounded claim. He can defend himself without counsel, but not without a jury. If this statute is constitutional he is forced to loan the plaintiff seven dollars for the purpose of maintaining a suit against himself. He is deprived of his property without his consent and without compensation. When the plaintiff sets out upon his lawsuit he knows the road he must travel and enters upon it of his own free will. The defendant, on the contrary, is an unwilling litigant. It cannot be said he wants the time of a jury without paying for it, for he wants no trial at all. But if a trial must be had, he demands it before the constitutional tribunal.

If a verdict shall decide that the defendant is the party in fault,

then an attachment of his property will compel him to pay this jury fee.

If he has no property, however, this statute would deprive him of trial by jury on account of his poverty.

Before the verdict, the presumption is that the defendant will never be liable to pay this expense, but this statute in effect shifts this presumption to the plaintiff. It puts the defendant in the position of the moving party and assuming that he is probably in the wrong, imposes a condition without which he cannot set himself right according to the law of the land.

But the defendant, if he chooses, has the constitutional right to call upon the plaintiff to prove before a jury the demand upon which he founds his action. *Frothingham* v. *Dutton*, 2 Greenl. 255.

It makes no difference that the case is tried by the court, for if the legislature can require this prepayment at all, it can make the penalty for not paying what it pleases, even find judgment against the defendant without proof or trial.

The case shows that plaintiff sold the flour and warranted it to be sound. This they had no authority to do in behalf of defendant. Usage is the measure of the authority of a factor or general selling agent to warrant. *Upton* v. *Suffolk Mills*, 11 Cush. 586.

No such usage is proved in the case, and the decision turned upon the admissibility of evidence of the custom.

The evidence of custom should have been excluded, for if the custom means anything, it means that upon the sale of flour there arises an implied warrant that the flour shall be sound.

It is settled in this State that no implied warranty of quality arises from the mere sale of goods. *Kingsbury* v. *Taylor*, 29 Maine, 508.

The custom being in direct opposition to this settled rule of law, the evidence tending to establish it should have been rejected. *Homer* v. *Dorr*, 10 Mass. 26 ; *Boardman* v. *Spooner*, 13 Allen, 359, 360 ; Hilliard on Sales, 2d ed., pp. 249, 250.

Custom is admissible to explain what is doubtful. *Leach* v. *Perkins*, 17 Maine, 462.

In the case at bar the custom was not to explain any ambiguity,

but to take the place of an express contract, and was inadmissible. *Atkins* v. *Howe*, 18 Pick. 16; *Ripley* v. *Crocker*, 47 Maine, 370.

Plaintiffs had no authority to send flour to Boston without knowledge of defendants. 1 Am. Leading Cases, 698, 699.

APPLETON, C. J. The act establishing the superior court for the county of Cumberland, c. 151, was approved 14th February, 1868. By § 6 it is provided, that 'if the plaintiff desires a jury trial, he shall indorse the same upon his writ at the time of entry. The defendant shall, within fourteen days after entry, file his pleading, and if the plaintiff has not demanded a jury, the defendant shall indorse on his plea his demand for a jury, if he desires one. Whenever a jury shall be so demanded by either party, the clerk shall enter the fact on the docket, and all other cases, except appeals, shall be tried by the justice without the intervention of a jury, subject to exceptions in matters of law, in term time, or if both parties desire, at chambers. The party demanding a jury shall pay a jury fee, and tax the same in his costs, which shall be the same as in the supreme judicial court, if he prevails; but in cases actually disposed of without a verdict, the jury fee, if any has been paid, shall be returned to the party paying it.'

By Art. 1, § 20 of the constitution of this State, it is provided that 'In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced; the party claiming the right, may be heard by himself and his counsel, or either at his election.'

It will be perceived that the right to a jury trial is given by the statute to either party at his option. Is the provision, by which the party desiring a jury trial is required to pay the customary jury fee, an infringement on the constitutional protection to the right of trial by jury?

The plaintiff, as a preliminary to a trial by jury, has always been held to pay the customary jury fee. If on the trial he succeeds, the amount paid is an item of cost, which the law imposes upon the defendant.

By the act under consideration, the defendant desiring a jury trial, must pay the fee. But the amount thus paid is a charge to be taxed in his bill of costs in case of his success. If unsuccessful, the defendant has only paid what, in such case, the law would compel him to pay.

The argument of inability to pay is alike applicable to the plaintiff as to the defendant. Because the defendant may be unable to pay the required amount, the loss of a jury trial would be no greater deprivation of a constitutional right to him, than to the plaintiff, if he were in the same category.

The prepayment of the jury fee is required of the party desiring a trial by jury. It is just as unconstitutional to require it of the plaintiff when he desires a trial by jury, as it is to require it of the defendant under the same circumstance, and no more so. But the prepayment of a jury fee by the plaintiff has never been deemed an infringement upon the right to a trial by jury. Nor can the prepayment by the defendant be so regarded, when it is made at his own option, and followed by the same consequences as when paid by the plaintiff.

In cases tried before justices of the peace, the defendant when unsuccessful and appealing is required to advance the jury fee. But this has never been held an infringement on his constitutional right to a trial by jury. But what matters it, whether the jury fee is paid by the defendant when he is an appellant or when he is not?

In *Beers* v. *Beers*, 4 Conn. 535, it was held that the act of the legislature enlarging the jurisdiction of justices was not repugnant to the constitution, as thereby impairing the right to trial by jury. ' An instrument,' observes Hosmer, C. J., ' remains inviolate, if it is not infringed; and by a violation of the trial by jury, I understand taking it away, prohibiting it, or subjecting it to unreasonable and burdensome regulations, which, if they do not amount to a literal prohibition, are, at least, virtually of that character. It could never be the intention of the constitution to tie up the hands of the legislature, so that no change of jurisdiction could be made,

and no regulation, even of the right of trial by jury, could be had. It is sufficient and within the reasonable intendment of that instrument, if the trial by jury be not impaired, although it may be subjected to new modes and even rendered more expensive, if the public interest demand such alteration.' So in *Jones* v. *Robbins*, 8 Gray, 329, it was held that a statute, which authorizes a single magistrate to try and pass sentence in a criminal case, but gives the defendant an unqualified and unfettered right of appeal, and a trial by jury in the appellate court, subject only to the requirement of his giving bail for his appearance there, or in default of such bail, being committed to jail, is not unconstitutional as impairing the right of trial by jury.

The defendant having desired a jury trial was entitled to it, upon complying with the condition invariably attached to such trials in civil cases,—the payment of the jury fee. With this he declined to comply. He stands in the same situation as a plaintiff would be in, who neglected or refused to comply with this requirement of law. Declining to make the required payment, the defendant must be held as waiving the right to a jury trial, when he refuses to do what is an essential and reasonable prerequisite to its enjoyment. All that remained to be done was a trial by the judge or the entry of a default. The defendant preferred a trial by the presiding justice, and the remaining inquiry relates to the ruling of the justice upon that trial.

When a cause is tried by the presiding justice, he is the final arbiter of the facts. His findings as to them are conclusive on the parties and his rulings as to the law, except so far as they are brought to the consideration of the court by exceptions or otherwise, are final.

The following facts were found by the justice before whom the cause was heard:

The defendants, flour manufacturers at St. Louis, on or about April 20, 1871, shipped to the plaintiffs, commission merchants at Portland, to be sold by them on commission, four hundred barrels of flour. Two hundred barrels were of the brand called the Con-

queror. On the 12th May following, the plaintiff sold the two hundred barrels of the brand Conqueror, to D. B. Ricker for $7.75 per barrel, and warranted the same to be good sound flour.

On the 15th May the plaintiffs rendered an account of said sale to the defendants, charging themselves with the proceeds of the flour sold, and charging their commissions to the defendants, and drew on them for the balance to square the account, which draft they paid.

On the 19th May, Ricker & Co. notified the defendants that the flour was musty, and was not such flour as they bought, and requested the plaintiffs to take back said flour, which they did, except twenty barrels which Ricker & Co. had sold, and paid them their loss on the flour sold. The plaintiffs, there being no market for musty and unsound flour in Portland, shipped it to Boston, where it was sold, at a loss of $417.16, which they seek to recover in this action.

It is in proof that the plaintiffs were notified of the unsoundness of the flour within ten days after the sale, and that the same was returned within that time, and the plaintiffs were guilty of no laches in the matter.

The plaintiffs offered testimony to show there was a custom among flour merchants of Portland, that if, after sale, flour proves musty and unsound, it is no sale, and the vendee has the right to rescind the sale and return the flour. The custom is not an unreasonable one. Evidence is admissible to prove a custom. Whether it is proved or not is for the determination of the presiding justice, when the cause is tried by him. He found there was such a custom. We cannot here try the correctness of his findings of fact.

The custom being established, the following rulings were made : 'That the flour proving unsound, and being returned within ten days after delivery, it was no sale by the plaintiffs to Ricker & Co., and that the plaintiffs being guilty of no laches in the premises, and the flour proving unsound, the defendants should bear the loss sustained in the sale of it.'

These are the only questions of law presented by the exceptions for our consideration. Now the sale in this case was conditional.

It was found that such was the custom. The flour was unsound. It was returned within the time fixed by custom. The time was a reasonable one, whether there was a custom on this subject or not. The authority to sell implies the right to give the vendee a reasonable time in which to ascertain the .character of the article sold. The equities of the case are with the plaintiffs. The defendants are not entitled to the price of sound flour for the musty and unsound flour which they shipped the plaintiffs.

No question of law is raised as to the conduct of the plaintiffs in their disposition of the flour. That as matter of fact, it was judicious and for the best interests of the plaintiffs, is fully established by the findings of the judge.

It is said that the plaintiffs had no right to warrant the soundness of flour sold by them on commission. The exceptions present no ruling of law on this subject. It would seem, however, according to some authorities, that when there are no restrictions, a commission merchant would have that right. In Story on Agency, § 102, the law is thus laid down: 'An authority to sell a horse includes a power to warrant him; a power to sell goods includes a power to warrant them,' and in § 59 the law is thus stated: 'A servant. employed to sell a horse is clothed, by implication (unless expressly forbidden), to make a warranty on the sale; so an agent or broker, having power to sell goods without any express restriction as to the mode, may sell by sample or with warranty.' An agent authorized to sell, is presumed to possess the power of warranting its quality and condition, unless the contrary appear; and this whether the agency be general or special. *Nelson* v. *Cowing*, 6 Hill, 336; *Andrews* v. *Kneeland*, 6 Cowp. 355. In *Upton* v. *Suffolk County Mills*, 11 Cush. 586, the warranty was that the flour should keep sweet during a sea-voyage, not that the flour was sweet at the time of sale. A warranty that an article when sold is sound, is materially different from a warranty that an article shall continue to remain sound for an indefinite period of time, and under conditions obviously endangering its soundness. But it is unnecessary to determine whether a commission merchant has a right to warrant or not, as it is not important to the decision of the case.

Upon the whole, we perceive no error of law on the part of the presiding judge, or that any injustice has been done. The defendants, if the flour was musty and unsound, were not entitled to the price of sound flour. If they have received more than the value of their flour, in consequence of the conditional sale made by the plaintiffs with a right to return, if the flour was found to be unsound, and the flour has been returned for that cause, and been sold again for its full value, though at a less price, the loss should be borne by the defendants, and not by the plaintiffs.

*Exceptions overruled.*

CUTTING, WALTON, DICKERSON, and DANFORTH, JJ., concurred·