(No. 17063.—Judgment reversed.)
THE PEOPLE ex rel. H. B. Fyfe, Appellee, vs. JOSEPH H.
BARNETT et al. Appellants.

*Opinion filed December 16, 1925—Rehearing denied Feb. 5, 1926.*

1. CONSTITUTIONAL LAW—*suffrage amendment does not affect question of eligibility for jury service.* The nineteenth amendment to the Federal constitution has the effect of nullifying every expression in the constitution and laws of the State denying or abridging the right of suffrage to women on account of their sex but has no effect whatever on the subject of liability or eligibility of citizens for jury service.

2. STATUTES—*intention of legislature when act was passed must be ascertained and given effect.* In the interpretation and construction of statutes the purpose and intent of the legislature when the act was passed must be ascertained and given effect, if possible, and the words of a statute must be taken in the sense in which they were understood at the time the statute was enacted.

3. SAME—*courts cannot annex new provisions to statute.* The office of the courts is to interpret the language used by the legislature in a statute where it requires interpretation and to declare and enforce the law as enacted, and they cannot annex new provisions to a statute or substitute different provisions.

4. SAME—*what may be considered in ascertaining intent of the legislature.* In ascertaining the purpose and intent of the legislature in the enactment of a statute it is proper to consider the history of the legislation on the subject, to compare statutes relating to the same subject passed at the same or different sessions, and to consider statutes upon cognate subjects though not strictly *in pari materia.*

5. JURORS—*statute for preparation of jury list does not include women.* The provision of the statute for the appointment of jury commissioners in counties of more than 250,000 inhabitants and requiring them to make a jury list "of all electors" between certain ages and possessing qualifications for jury duty does not apply to and was not intended to include women, as the word "electors," when the statute was enacted, meant male persons, only.

APPEAL from the Circuit Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding.

ALFRED S. AUSTRIAN, for appellants.

ELIZABETH PERRY, for appellee.

GEORGE W. MILLER, *amicus curiæ.*

Mr. JUSTICE HEARD delivered the opinion of the court:

Mrs. Hannay Beye Fyfe, the petitioner, filed in the circuit court of Cook county her petition for a writ of *mandamus* against the appellants, who are the jury commissioners for Cook county, to compel them to replace her name upon the jury lists of Cook county. The petition alleged that she is a citizen of the United States, forty-six years of age, a resident of Oak Park, in said county, for more than fifteen years, and for more than four years last past has been an elector and legal voter in the township of Oak Park, in said county; that Cook county has more than 250,000 inhabitants and that appellants are the jury commissioners for said county; that appellants prepared the jury list in 1924, and that the name of the petitioner was included therein and entered in the jury commissioners' books; that she did not come within any of the classes of persons exempted from jury duty which are enumerated in the act relating to jurors; that on or about December 31, 1924, the appellants sent to her by mail a questionnaire, to which she made answer; that among the questions and her answers thereto are the following:

Q. "Is there any reason why you should not serve as a juror, if summoned?

A. "None that I know of, unless the law does not allow females that privilege."

—that upon receipt of her communication the appellants amended and revised the Cook county jury list by eliminating her name therefrom; that she demanded that her name be replaced on the jury list, but that appellants refused to do so, alleging that she did not "possess the necessary legal qualifications for jury duty, in that she was a woman;" that she was willing, able and anxious to perform and discharge

the duties of a juror, and that the elimination of her name from the jury list was contrary to law and in violation of her constitutional and statutory rights and privileges. Appellants demurred to the petition. The trial judge overruled the demurrer, and upon appellants electing to stand by the demurrer a final order was entered directing the clerk of the court to issue a peremptory writ of *mandamus* commanding the appellants, as jury commissioners, forthwith to replace upon the jury lists of Cook county the name of the petitioner.

Appellants contend that such order must be reversed for the reason that the existing statutes of the State of Illinois cannot be construed so as to impose upon women electors the obligation to serve on juries, and because by the issuance of the writ in question the court has obligated appellants to perform a duty in conflict with the constitution of this State.

✓ Section 1 of the act of February 11, 1874, relating to jurors, (Cahill's Stat. 1923, chap. 78,) provides: "That the county board of each county shall, at or before the time of its meeting, in September, in each year, or at any time thereafter, when necessary for the purpose of this act, make a list of a sufficient number, not less than one-tenth of the legal voters of each town or precinct in the county, giving the place of residence of each name on the list, to be known as a jury list."

Section 2 of the act provides, in part, as follows: "At the meeting of the county board, in the respective counties in this State, containing a population of not more than 250,000, in September, in the year 1874, and in each year thereafter, such board shall select from such list a number of persons equal to one hundred (100) for each trial term of the circuit and other courts of record, except county courts, which may be provided by law, to be held during the succeeding year, to serve as petit jurors. * * * Jurors in all counties in Illinois must have the legal qualifica-

tions herein prescribed, and shall be chosen a proportionate number from the residents of each town, or precinct, and such persons only as are:

"First. Inhabitants of the town, or precinct, not exempt from serving on juries.

"Second. Of the age of twenty-one (21) years, or upwards, and under sixty-five (65) years old.

"Third. In the possession of their natural faculties, and not infirm or decrepit.

"Fourth. Free from all legal exceptions, of fair character, of approved integrity, of sound judgment, well informed, and who understand the English language."

The Jury Commissioners act in force July 1, 1887, as amended July 1, 1897, and April 24, 1899, (Cahill's Stat. 1923, chap. 78, par. 26,) for the appointment of jury commissioners in counties having more than 250,000 inhabitants, provides, in part, as follows: "The said commissioners upon entering upon the duties of their office, and every four years thereafter, shall prepare a list of all electors between the ages of twenty-one and sixty years, possessing the necessary legal qualifications for jury duty, to be known as the jury list. The list may be revised and amended annually in the discretion of the commissioners. The name of each person on said list shall be entered in a book or books to be kept for that purpose, and opposite said name shall be entered the age of said person, his occupation, if any, his place of residence, giving street and number, if any, whether or not he is a householder, residing with his family, and whether or not he is a freeholder."

Women were given a limited right of suffrage in Illinois by an act of the legislature in force July 1, 1913. (Laws of 1913, p. 333.) This act gave women the right to vote for presidential electors, certain non-constitutional officers, and on propositions submitted to electors of municipalities and other political divisions of the State. In *Scown v. Czarnecki*, 264 Ill. 305, this act was held constitutional. It

remained in force until April 29, 1921, when it was repealed by the Woman's Suffrage act, effective on that date. (Cahill's Stat. 1923, chap. 46, pars. 67, 68.)

By a joint resolution of Congress adopted by the House of Representatives on May 19, 1919, and by the Senate on June 4, 1919, the nineteenth amendment to the constitution of the United States was submitted to the States for ratification. On August 26, 1920, the Secretary of State of the United States in an official proclamation declared the amendment ratified by three-fourths of the States, and it became a part of the constitution of the United States. That amendment is as follows:

"The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex.

"Congress shall have power to enforce this article by appropriate legislation."

The nineteenth amendment to the constitution of the United States makes no provision whatever with reference to the qualifications of jurors. Since the adoption of the amendment to the constitution the legislature of the State of Illinois has not enacted any legislation on the subject of the eligibility or liability of women for jury service. While this amendment had the effect of nullifying every expression in the constitution and laws of the State denying or abridging the right of suffrage to women on account of their sex, it did not purport to have any effect whatever on the subject of liability or eligibility of citizens for jury service. Since the adoption of the amendment the legislature of Illinois in 1921 granted to women the full right of suffrage, and they became, equally with men, electors and legal voters.

The question involved in this suit has never been passed upon by this court. Very able briefs and arguments have been filed in the case by both parties and by *amicus curiæ,* in which the decisions of other States in which the question

has arisen are cited and the construction of the constitution of this State and the right of trial by jury as it existed at common law are discussed. The decisions of the courts of last resort in other States to which we have been cited are based upon constitutions and statutes differing somewhat from ours, and while they contain much forceful argument they cannot be considered as of any binding force in this cause.

It is a primary rule in the interpretation and construction to be placed upon a statute that the intention of the legislature should be ascertained and given effect. (*People* v. *Price,* 257 Ill. 587.) If in a statute there is neither ambiguity nor room for construction the intention of the legislature must be held free from doubt. What the framers of the statute would have done had it been in their minds that a case like the one here under consideration would arise is not the point in dispute. The inquiry is what, in fact, they did enact, possibly without anticipating the existence of such facts. This should be determined not by conjecture as to their meaning but by the construction of the language used. (*Wall* v. *Pfanschmidt,* 265 Ill. 180.) The only legitimate function of the court is to declare and enforce the law as enacted by the legislature. The office of the court is to interpret the language used by the legislature where it requires interpretation, but not to annex new provisions or substitute different ones. (*Calkins* v. *Calkins,* 216 Ill. 458.) The endeavor should be made always, in construing one or more statutes, to ascertain, by the history of the legislation on the subject, the purpose and intent of the legislature, and to that end it is not only proper to compare statutes relating to the same subject passed at the same or different sessions of the legislature, but to consider statutes upon cognate subjects though not strictly *in pari materia.* (*Chicago, Burlington and Quincy Railroad Co.* v. *Doyle,* 258 Ill. 624.) The true rule is that statutes are to be construed as they were intended to be understood

when they were passed. Statutes are to be read in the light of attendant conditions and that state of the law existent at the time of their enactment. The words of a statute must be taken in the sense in which they were understood at the time the statute was enacted. (25 R. C. L. 959.) In *Uphoff* v. *Industrial Board,* 271 Ill. 312, it is said: "The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In construing a statute the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not also within the intention." At the time of the passage by the legislature of the act above mentioned, providing for the appointment of a jury commission and the making of jury lists, the words "voters" and "electors" were not ambiguous terms. They had a well defined and settled meaning. By section 1 of article 7 of the constitution of 1870 it is provided: "Every person having resided in this State one year, in the county ninety days, and in the election district thirty days next preceding any election therein, who was an elector in this State on the first day of April, in the year of our Lord 1848, or obtained a certificate of naturalization before any court of record in this State prior to the first day of January, in the year of our Lord, 1870, or who shall be a male citizen of the United States, above the age of twenty-one years, shall be entitled to vote at such election." By section 65 of the act on elections in force at that time it was provided: "Every person having resided in this State one year, in the county ninety days, and in the election district thirty days next preceding any election therein, who was an elector in this State on the first day of April, in the year of our Lord 1848, or obtained a certificate of naturalization before any court of record in this State prior to the first day of January, in the year of our

Lord 1870, or who shall be a male citizen of the United States, above the age of twenty-one years, shall be entitled to vote at such election." (Rev. Stat. 1874, p. 460.)

The legislative intent that controls in the construction of a statute has reference to the legislature which passed the given act. (25 R. C. L. 1029.) Applying the rules of construction herein mentioned, it is evident that when the legislature enacted the law in question, which provided for the appointment of jury commissioners in counties having more than 250,000 inhabitants and imposing upon them the duty of making a jury list, using the words "shall prepare a list of all electors between the ages of twenty-one and sixty years, possessing the necessary legal qualifications for jury duty, to be known as the jury list," it was intended to use the words "electors" and "elector" as the same were then defined by the constitution and laws of the State of Illinois. At that time the legislature did not intend that the name of any woman should be placed on the jury list, and must be held to have intended that the list should be composed of the names of male persons, only. In interpreting a statute the question is what the words used therein meant to those using them. (25 R. C. L. 1029.) The word "electors," in the statute here in question, meant male persons, only, to the legislators who used it. We must therefore hold that the word "electors," as used in the statute, means male persons, only, and that the petitioner was not entitled to have her name replaced upon the jury list of Cook county.

The judgment of the circuit court is therefore reversed.

*Judgment reversed.*