## HOXIE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.
November 22, 1926.)

No. 4868.

1. **Jury** ⚫⇒38—Trial before jury composed in part of women meets constitutional guaranty (Const. Amend. 6).

Trial before a jury composed in part of women is· such as is guaranteed by Const. Amend. 6.

2. **Intoxicating liquors** ⚫⇒249—Where customs officer took sealed, unstamped, addressed envelope from ship's purser and directed its delivery to customs collector, who discovered in it records of liquor sales by defendant, search was not unlawful (Comp. St. § 5841h).

Where defendant, while passenger on steamer, gave purser a plain, sealed, unstamped envelope for delivery to a particular person, which envelope customs officer later took from purser as a package not invoiced or among the ship's papers, and directed its delivery to customs collector, who in turn delivered it to district attorney on discovering that it contained records of liquor sales, *held*, such search and seizure was not unlawful, in view of Comp. St. § 5841h.

3. **Criminal law** ⚫⇒423(3)—Testimony of bank cashier held competent to show that drafts payable to one alleged conspirator were sold and delivered to another.

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), bank cashier's testimony *held* competent and sufficient to show that particular drafts payable to one alleged conspirator were sold and delivered by the bank to another.

4. **Criminal law** ⚫⇒403—Certified copies of invoices for liquor sold to defendant by Canadian corporation, though secondary evidence, held admissible in prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.).

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), certified copies of invoices for liquor sold to one defendant by a Canadian corporation, though secondary evidence, *held* admissible.

5. **Criminal law** ⚫⇒346—In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), evidence of transactions occurring outside jurisdiction of United States held not irrelevant.

In prosecution for conspiracy to violate National Prohibition Act ·(Comp. St. § 10138¼ et seq.), evidence of transactions between one defendant and Canadian corporation, which had sold liquor to him, *held* not irrelevant, because they had occurred outside jurisdiction of United States.

In Error to the District Court of the United States for Division No. 1 of the Territory of Alaska.

Charlie Hoxie was convicted of conspiracy to violate the National Prohibition Act, and he brings error. Affirmed.

J. A. Hellenthal, S. Hellenthal, and H. L. Faulkner, all of Juneau, Alaska, for plaintiff in error. ·

Arthur G. Shoup, U. S. Atty., and Howard D. Stabler, Asst. U. S. Atty., both of Juneau, Alaska.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Writ of error to review conviction of Hoxie for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.). The indictment charged that from June 12, 1923, to December 3, 1925, defendant and others were to furnish, purchase, and obtain intoxicating liquor in British Columbia for importation into Alaska; that they were to import and introduce intoxicating liquor into Alaska from British Columbia, and to transport, store, and sell intoxicating liquor in Alaska. Among overt acts charged were that at various times defendants chartered and used certain named boats for the purpose of transportation of liquor from British Columbia to Alaska; that they imported liquor into Alaska, and stored and. sold the imported liquor; that Hoxie, through the B. M. Behrends Bank in Alaska, paid money to a codefendant for liquor sold to Hoxie for importation into Alaska.

[1] We are again asked to hold that in Alaska a jury composed in part of women is not such as is guaranteed by the provisions of the Sixth Amendment to the Constitution. That question received our careful consideration in Tynan v. United States (C. C. A.) 297 F. 177, certiorari denied 266 U. S. 604, 45 S. Ct. 91, 69 L. Ed. 463, and we abide by the conclusion there reached.

[2] It is said that the search and seizure which resulted in the possession of a certain bank book and memoranda by the prosecuting attorney were in violation of Hoxie's constitutional rights. Hoxie was a passenger on the steamer Prince Rupert, traveling from Prince Rupert, B. C., to Juneau, Alaska. He had upon his person certain memorandum books and a bank book. After the ship left Prince Rupert, and before she arrived at Ketchikan, Alaska, Hoxie voluntarily delivered to the purser on the boat the several books which were then in a plain, unstamped, sealed envelope, addressed to James Carlson, Juneau, Alaska. Hoxie asked the purser to deliver the package to the addressee at Juneau, saying Carlson would call for it. On arrival at Ketchikan, while American customs officers were inspecting the ship's documents, a deputy col-

lector saw the envelope addressed to Carlson in the purser's office by the side of the ship's customs papers. It was not stamped, manifested, or invoiced. The customs officer took the envelope from the purser, put it in a United States Treasury envelope, sealed it, and addressed it to the collector of customs at Juneau, and instructed the purser to deliver it to the collector at Juneau. Soon after the customs officer delivered the envelope to the purser as stated, Hoxie asked for it; but the purser felt it was his duty to follow the instructions given by the customs officer. He refused to deliver it to Hoxie, and on arrival at Juneau delivered it to the collector, who opened the envelope and found the memorandum books which contained accounts of liquor sales with private dealers, and a bank book showing deposits in the Behrends Bank in Juneau to the credit of Hoxie. The collector retained possession of the books, refused to deliver them to the addressee, Carlson, and turned them over to the United States attorney at Juneau.

It is our opinion that, under the provisions of the act of 1922 (U. S. Comp. St. § 5841h), the customs officers were authorized to go aboard the boat and examine the package not invoiced or among the ship's papers, and that when, upon inspection, it was found that the envelope contained evidence of a crime, the officials were under no duty to turn it over to Carlson, but were right in delivering it to the district attorney, who could produce the evidence upon a trial. Johnson v. United States, 228 U. S. 457, 33 S. Ct. 572, 57 L. Ed. 919, 47 L. R. A. (N. S.) 263; Canada v. United States (C. C. A.) 5 F. (2d) 488; Levin v. United States (C. C. A.) 5 F.(2d) 601.

[3] A witness, indicted as a co-conspirator, testified that in Prince Rupert Hoxie made payments for liquor to be transported to Alaska; that for a time payments were made in cash, but later by draft; that on the boat he had seen drafts drawn on the Behrends Bank at Prince Rupert; that they had been turned over by Hoxie to Besner, general manager of the Consolidated Exporters' Corporation, who was indicted as a co-conspirator. The cashier of the Behrends Bank identified 12 original canceled paid drafts, bearing dates between June 13, 1924, and July 17, 1925, payable to the order of Besner, manager of the Consolidated Exporters'

Corporation. The bank's records showed that the drafts were sold by the bank to Hoxie. The cashier personally issued one of the drafts and signed others, and said that all of them were issued in the ordinary course of the bank's business. Such evidence was competent and sufficient to show that the drafts were sold and delivered to Hoxie by the bank, payable to the order of Besner.

[4] There was no error in the admission of four certified copies of invoices, dated at various times in 1925, for liquors sold by Consolidated Exporters' Corporation to Hoxie, "Address, Juneau, Alaska." It appeared that the originals of the invoices were in the custody of the Crown Court in British Columbia for use as evidence there, and the genuineness of the copies was certified to by the crown prosecutor. The American consul at Prince Rupert testified to facts concerning the originals of the invoices and to the making and certification of the copies. Although the copies were secondary evidence, it is clear that they were the best that could be obtained and were admissible. Underhill on Criminal Evidence, p. 107.

[5] Nor is there any merit in the argument that the transactions between Hoxie and the Consolidated Exporters' Corporation at Prince Rupert were irrelevant, because they were had outside the jurisdiction of the United States, in British Columbia, where the corporation existed and appeared to be lawfully authorized to do business. The evidence is to the effect that the original conspiracy was formed by Hoxie and others in Alaska, and that boats were to be used in going from Alaska to Prince Rupert to obtain liquors for importation into Alaska, and that such plan was carried out in co-operation with Besner, who was general manager of the Canadian corporation, and who understood with Hoxie and the others charged that the destination of the liquors was Juneau. Under such circumstances, it is clear that evidence of what was done in pursuit of the execution of the conspiracy was competent, although the action was taken in part in British Columbia. Dealy v. United States, 152 U. S. 539, 14 S. Ct. 680, 38 L. Ed. 545; Ford v. United States (C. C. A.) 10 F.(2d) 345.

After careful consideration of the whole record, we find no ground for reversing the judgment.

Affirmed.