[File No. Cr. 114.]

STATE OF NORTH DAKOTA, Respondent, v. ED NORTON, Appellant.

(255 N. W. 787.)

Opinion filed June 9, 1934.   Rehearing denied July 3, 1934.

*Fredricks & Fredricks,* for appellant.

*P. O. Sathre,* Attorney General, and *Russell D. Chase,* State's Attorney, for respondent.

BURR, Ch. J. The defendant was convicted of the crime of engaging in the liquor traffic in that he "wilfully and unlawfully did sell, deliver, transport, furnish and possess intoxicating liquor then and there fit and intended for beverage purposes and containing more than five per cent. of alcohol by volume."

The specifications of error are in two general classes—one class dealing with the whole subject of the public policy of this state regarding intoxicating liquors, and the other with the constitutional qualifications of jurors.

Defendant says that, because of the repeal of article 20 of the constitution of this state, the repeal of the Eighteenth Amendment of the Federal Constitution, the effect of this latter repeal upon the Volstead Act, the enactment of the initiated measure known as the "beer bill" and the necessary implications which accompany such bill "all conflicting statutory provisions with respect to intoxicating liquor are impliedly and expressly repealed."

That the elimination of article 20 from the state constitution did not, in itself, repeal the legislative enactments "prohibiting the importation, manufacture, sale or possession of intoxicating liquors as a beverage" was determined by this court in Re Aipperspach, 63 N. D. 358, 248 N. W. 488.

The defendant realizes the import of this decision but very earnestly urges that the principles involved therein be reviewed and the decision overruled. The defendant urges that the statutes levelled against the liquor traffic were not enacted because of the deliberate policy and purpose of the legislature with reference to the subjects involved, but were rather the response of the legislature to the will of the people as expressed in article 20; that there is nothing to indicate such statutes would have been enacted by the legislature were it not for the moral compulsion of article 20; and that a review of the history of state policy relative to intoxicating liquors shows quite strongly that such laws would not have been enacted were it not because of this constitutional provision.

This whole matter was considered in the case cited. We are satis-

fied that such decision is correct. There is no difference in principle between the points argued in such case and the ones cited here, and therefore such decision is re-affirmed.

The effect of the repeal of the Eighteenth Amendment of the Constitution of the United States was before the court in State v. Ligaarden, 59 N. D. 475, 230 N. W. 729, 70 A.L.R. 126, and "the right of the state to enact legislation controlling the liquor traffic" independent of the Eighteenth Amendment, in State v. Severin, 58 N. D. 792, 228 N. W. 201. The principles set forth in the Ligaarden and Severin Cases are controlling here. They have been re-examined and are re-affirmed.

There is no merit in the contention that the provision of the so-called "beer bill," the initiated measure cited, prevents the prosecution of the defendant. The alcoholic content proven in this case exceeds the alcoholic content provided for in that bill, and while it is claimed the people modified the pre-existing law such modification, so far as applicable here, is merely in the definition of beer—authorizing the sale of a beer with a greater alcoholic content than was permissible prior thereto. The beer involved in this case is shown to be of greater alcoholic content than permitted under the new beer bill. Hence there is no merit in the objection.

The next class of objection deals with the composition of the jury.

The jury that tried the defendant consisted of nine men and three women. It is the contention of the defendant that under the constitutional provisions of this state and the provisions of the Sixth, Seventh and Fourteenth Amendments of the Federal Constitution, women are not eligible to jury duty.

The Fourteenth Amendment of the Federal Constitution says, among other things, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law. . . ." Appellant urges he has a right to be tried by a constitutional jury and that the denial of this right by legislative action of this state is a violation of the provision quoted from the Fourteenth Amendment.

The principle involved is determined by the interpretation of the state constitutional provisions and is fully answered therein.

Section 7 of article 1 of the state constitution, being a portion of the Declaration of Rights, says:

"The right of trial by jury shall be secured to all, and remain inviolate; but a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law."

Section 24 of this article 1 says this and certain other declarations, are "excepted out of the general powers of government and shall forever remain inviolate."

In Barry v. Truax, 13 N. D. 131, 99 N. W. 769, 65 L.R.A. 762, 112 Am. St. Rep. 662, 3 Ann. Cas. 191, the term "the right of trial by jury" as used in § 7 of article 1 of the state constitution is shown to include "all of the substantial elements of the trial by jury as they were known to and understood by the framers of the constitution and the people who adopted it." See also Smith v. Kunert, 17 N. D. 120, 115 N. W. 76; Power v. Williams, 53 N. D. 54, 205 N. W. 9.

These elements are, number, impartiality and unanimity. State v. Rosenberg, 155 Minn. 37, 192 N. W. 194.

In Power v. Williams, 53 N. D. 54, 205 N. W. 9, supra, we reviewed the scope of this right as it existed at the time of the adoption of the state constitution showing that from the very beginning of territorial legislation, by the provisions of the act creating the territory the provisions of the constitution of the United States were incorporated in the basic law of the new government and therefore the provisions of the Sixth and Seventh Amendments of the Constitution of the United States controlled the jury question; that this required the unanimous verdict of twelve jurors; that under the decision of the United States Supreme Court set forth in Springville v. Thomas, 166 U. S. 707, 41 L. ed. 1172, 17 S. Ct. 717, a territorial legislature had no authority to dispense with the requirement of unanimity (see also American Pub. Co. v. Fisher, 166 U. S. 464, 41 L. ed. 1079, 17 S. Ct. 618); and that this conception of the trial by jury is the one which the constitutional convention of this state had in mind when § 7 of the state constitution was drafted. We therefore held that the legislature could not, without a change in the constitution, vary the unanimity feature of trial by jury. Consequently a verdict returned by five-sixths of any jury was invalid.

Appellant says that in view of this conception of juries the legis-

lative enactment permitting the selection of women as jurors—chapter 81 of the Session Laws of 1921—is invalid; that by the provisions of the act creating the territory of Dakota, and by the territorial legislation in harmony therewith all juries in courts of law are composed of men only; that the territorial legislature expressly required the jury list to be made up from male citizens only; that women were never eligible for jury duty under the act creating the territory, territorial legislation or the constitution of this state; that the legislature had no more power to extend the range of selection than it had to abrogate the unanimity feature, and if it attempts to do so it violates the Fourteenth Amendment of the Federal Constitution; and that before women are eligible for jury duty in this state there must be a change in the state constitution.

This precise question came before the United States Circuit Court of Appeals, 9th Circuit, in Tynan v. United States, 297 F. 177, where the territory of Alaska in 1923 had extended the range of jury service to women. The court held such law did not violate the organic law of Alaska providing that trial by jury shall remain inviolate, and that jurors shall be male citizens, nor the provision of the Federal Constitution giving to the accused the right to a trial by an impartial jury. The United States Supreme Court denied a writ of certiorari, 266 U. S. 604, 69 L. ed. 463, 45 S. Ct. 91.

In Hoxie v. United States, 15 F. (2d) 762, the United States Circuit Court of Appeals, 9th Circuit, said, in another case arising in Alaska, "trial before a jury composed in part of women *is such* as is guaranteed by Const. Sixth Amendment." (Italics ours.)

But in support of his contention appellant cites State v. Kelley, 39 Idaho, 668, 229 P. 659; People ex rel. Fyfe v. Barnett, 319 Ill. 403, 150 N. E. 290; Opinion of Justices, 237 Mass. 591, 130 N. E. 685; Power v. Williams, 53 N. D. 54, 205 N. W. 9, supra; State v. James, 96 N. J. Law, 132, 114 A. 553, 16 A.L.R. 1141; State v. Mittle, 120 S. C. 526, 113 S. E. 335; Tremont v. State, 96 Tex. Crim. Rep. 572, 259 S. W. 583; and other cases, to the effect that while the Nineteenth Amendment of the Constitution of the United States prevents any state from denying citizens of the United States the right to vote, because of sex, and therefore in effect confers the

right of suffrage upon women, this does not make them eligible as jurors.

In People ex rel. Fyfe v. Barnett, 319 Ill. 403, 150 N. W. 290, supra, the court sets forth the right of the legislature to define the qualifications of jurors and says in effect that the right, the duty or the privilege of serving as a juror, whichever it may be called, is not a natural right, privilege or duty, but is conferred or imposed by statute; and further, that jury service was not an attribute or quality or privilege or duty which arose from the right of suffrage, as jury service and the right of suffrage were, and are, neither synonymous nor conterminous.

See also People ex rel. Murray v. Holmes, 341 Ill. 23, 173 N. E. 145, 148. To the same effect is Re Grilli, 110 Misc. 45, 179 N. Y. Supp. 795, affirmed in 192 App. Div. 885, 181 N. Y. Supp. 938.

The Idaho, Illinois, New Jersey, Massachusetts, South Carolina, and Texas cases cited specifically state that even if the Nineteenth Amendment of the United States Constitution prevents denial of the right of suffrage to women it does not thereby confer the right to serve as jurors. There are other decisions to the same effect.

It will be noted however that in these cases cited there is an absence of subsequent legislation making women eligible to jury duty. In the Alaska cases referred to there was legislation.

Most of the states, if not all, have constitutional provisions to the effect that "the right of trial by jury shall be secured to all and remain inviolate," and it has been held that where, at the time of the ratification of the Nineteenth Amendment, statutes provided the jurors should be selected from the body of electors, women immediately became eligible to jury duty. See State v. Walker, 192 Iowa, 823, 185 N. W. 619; People v. Barltz, 212 Mich. 580, 180 N. W. 423, 12 A.L.R. 520; Parus v. District Ct. 42 Nev. 229, 174 P. 706, 4 A.L.R. 140; Com. v. Maxwell, 271 Pa. 378, 114 Atl. 825, 16 A.L.R. 1134; In McKinney v. State, 3 Wyo. 719, 30 P. 293, 16 L.R.A. 710, this proposition is discussed, but not decided. For contra, see People ex rel. Fyfe v. Barnett, 319 Ill. 403, 150 N. W. 290, supra. A similar principle was upheld by the United States Supreme Court in Neal v. Delaware, 103 U. S. 370, 26 L. ed. 567, where it was held that though the Delaware statute enacted prior to the adoption of the

Fifteenth Amendment of the Federal Constitution said jurors should be selected from electors, the effect of the Fifteenth Amendment was to make colored people eligible to jury duty eo instanti.

In this state, prior to 1921, our statutes provided all "male citizens residing in any of the counties of this state having the qualifications of electors, and of sound mind and discretion . . . are competent to serve on all grand and petit juries . . .," making certain exceptions. See § 814, Comp. Laws. It will be noted that the qualifications for jurors were identical with the qualifications for electors. This was in harmony with the law of the United States creating the territory, with the territorial legislation and with the constitutional provisions of this state. By 1921 the Nineteenth Amendment of the Constitution of the United States had been ratified and the legislature of that year, by means of chapter 81 of the Session Laws of 1921, amended § 814 of the Comp. Laws so as to read "all *citizens* of any of the counties of this state having the qualifications of electors, and of sound mind, and discretion . . . are competent to serve on all grand and petit juries, etc." The amendment thus conformed the qualifications of jurors to the qualifications of electors so far as sex is concerned. Thus while the principles set forth in the Idaho, Illinois, Massachusetts, New Jersey, South Carolina, and Texas cases may be correct, and that without state legislation the ratification of the Nineteenth Amendment of the Constitution of the United States did not in itself confer on women the right and privilege of jury duty, nevertheless the force of these cases is neutralized here because of our subsequent legislation. These cases are based on the principle that the Nineteenth Amendment, in itself, did not confer the right or privilege of jury duty, but that such status must be created by the legislature of each state.

The act of our legislature making women eligible to jury duty is a legislative interpretation of the constitution. Since that time' all the courts have acted under such legislation. It is a matter of common knowledge that women have served as jurors in many, if not all, of the district courts of this state. This has been the judicial practice ever since. Thus we have both a legislative and more or less judicial interpretation of our constitution. True, these views are not controlling when the matter is presented to us squarely for decision as it is

here, but they have persuasive force. This commonly accepted interpretation is in harmony with the history of jury legislation through all the centuries since Magna Charta—that is, that the parliament, the legislature, or other legislative body has the power to prescribe the qualifications of the jury so as to keep that body abreast with the demands and conditions of the day.

Appellant says however that in view of the constitution of this state the legislature is inhibited from taking such subsequent action.

If the position of the appellant be correct then it would be a question whether the people themselves could change the qualifications for jurors. If the jury of today must in all respects be identical with the jury of territorial days then § 24 of the constitution removes article 7 of the constitution from legislative action and there is no way whatever for the legislature to change the qualifications. As stated in Re Mana, 178 Cal. 213, 172 P. 986, L.R.A.1918E, 771, while "constitutional provisions guaranteeing the right to a trial by jury establish the right to a trial as known at common law" yet the matter of "qualifications of the jury is a matter subject to legislative control, and even though prescribed qualifications may differ from those of common law, the legislation is valid." See also Palmer v. State, 197 Ind. 625, 150 N. E. 917; Tynan v. United States (C. C. A. 9th) 297 F. 177.

The whole theory of jury qualifications in this country is the theory that electors are eligible to jury duty. This is the theory of this state. True it was *male* citizens having the qualifications of electors, but at that time only men were electors. The legislature of the state has some discretion in defining the qualifications of jurors. From the very first certain male citizens such as judges, sheriffs, coroners, attorneys at law engaged in practice, etc. were debarred from jury duty, while others had the privilege of declining the service. It cannot be argued successfully that under no circumstances may the legislature change such qualifications without an amendment to the constitution. The decision of this court in Power v. Williams, supra, was dealing with the question of unanimity, and not with the question of qualification. Indeed, we held therein that the jury was not twelve individual elements, but a body of twelve acting as an entirety. We were not concerned with the qualifications of jurors. We did not hold therein that the question of qualification was withdrawn from legislative control.

In harmony with the California case cited is the case of People v. Barltz, supra, wherein it is stated that "the qualifications of jurors are matters of legislative control, even though the qualifications laid down by the legislature differ from those of the common law." See also State v. Walker, 192 Iowa, 823, 185 N. W. 619; People v. Merhige, 219 Mich. 95, 188 N. W. 454; State v. DeLorenzo, 81 N. J. L. 613, 79 A. 839, Ann. Cas. 1912D, 329; State v. James, 96 N. J. L. 132, 114 A. 553, 16 A.L.R. 1141; Com. v. Maxwell, 271 Pa. 378, 114 A. 825, 16 A.L.R. 1134. The qualifications of jurors are not unalterable like the laws of the Medes and Persians.

Appellant lays great stress upon the constitutional provision that the right of trial by jury shall "remain inviolate" and argues this means there can be no legislative change in the character of the jury. It will be noticed it is the *right* of trial by jury which is to remain inviolate —not the qualification of jurors. Trial by jury meant an unanimous decision of twelve persons of the same class as the defendant. The defendant was to be tried by his peers. The essential features were the number, the impartiality and the unanimity. The legislature has the power to prescribe qualifications. The history of jury service in this country is the history of service by the electors, and with us the "electors" are "peers." The legislature may extend the range of selection provided that the essential elements of the jury system are maintained as required by the constitution. It would indeed be a most literal adherence to an ancient method if it must be said the legislature has no power or authority to vary the qualifications. One would be required to hark back to the days of Magna Charta under such an interpretation. Legislation must of necessity take into consideration the change in conditions and in applying the established principles to these changes must make changes in the application from time to time. This is done without sacrifice of principle and makes legislation compatible with the state of society of the day.

That the constitutional right of trial by jury is not violated by the conferring of this duty upon women is set forth in State v. Chase, 106 Or. 263, 211 P. 920. Here it is shown that this right means a right to "a trial by an impartial jury of his peers and since women are peers of men politically, in view of the Bill of Rights" of that state the extension of this duty to women in no way impaired defendant's constitutional

684

right to a trial by a competent jury. That trial by "peers" or equals is the essence of the jury system is set forth in Strauder v. West Virginia, 100 U. S. 303, 25 L. ed. 664, where the court says: "The very idea of a jury is a body of men composed of the peers or equals of the persons whose rights it is selected or summoned to determine; that is of his neighbors, fellows, associates, *persons having the same legal status in society as that which he holds.*" The court was interpreting the Fourteenth Amendment of the Federal Constitution with respect to privileges of citizens of the United States and determined that the trial of a negro by a jury from which colored people were excluded violated the basic idea of a jury as denying trial by peers.

Legislation which makes women eligible for jury duty is a mere recognition of the equality of the sexes in all matters affecting the state. It maintains the principle that the selection of the jury is confined to peers, and in no way affects the number, impartiality or unanimity.

The constitution nowhere says that the jury must be composed of men. It is true that at the time of the adoption of the constitution the jury was composed of men, and the statute confined it to male citizens; but this was because it was only men who were electors. The jury as known to the people of that day was a jury selected from the voting citizens. It may be true the legislature, in the absence of constitutional provisions to the contrary, could confine jury duty to men; but our legislature did not see fit to do so. While it is possible the defendant may be correct when he contends in effect that taking the constitutional provision by itself there is no contemplation of women on the jury because the qualifications of the jurors, in the absence of legislation, would be considered to be the qualifications in existence at the time of the adoption of the constitution, we need not consider that effect now. In this state we have legislative action defining the qualifications of jurors. By legislative action all citizens having the qualifications of electors are eligible to jury duty. This includes women. It is peculiarly a legislative function to define the qualifications.

But the appellant urges strenuously that § 7 of the constitution when it says "but a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law," shows very clearly an intent to limit jury duty to men alone, that the right of suf-

frage and the right of service on a jury are separate and distinct rights, not conterminous, and that the word "men" shows clearly a meaning restricted to sex, and not "men" in a generic sense.

While in People ex rel. Fyfe v. Barnett, 319 Ill. 403, 150 N. W. 290, supra, the court construed the term "jury" and "elector" as used in the jury statutes of Illinois enacted before the adoption of the Nineteenth Amendment, "as they were intended to be understood when they were passed" and said that though the Nineteenth Amendment in effect broadened the meaning of the term "elector" for voting purposes, yet in the absence of a subsequent statute giving this broadened effect to the word "elector" as used in the jury statutes the term must be interpreted to mean men only; we can not accept that rule as warranting a similar construction here. We are not construing a statute enacted before the ratification of the Nineteenth Amendment, but a constitutional provision of this state involving the legislative power to prescribe qualifications of jurors in the light of the constitutional purposes to secure this right and maintain it inviolate, and legislation subsequent to the Nineteenth Amendment.

"Inviolate" has reference to the right. It is the "right" which must not be impaired. See Flint River S. B. Co. v. Roberts, 2 Fla. 102, 48 Am. Dec. 178. From the earliest times it has always been held that reasonable regulations affecting the exercise of the right may be prescribed by the legislature. See Garrison v. Hollins, 2 Lea, 684; People v. Hoffman, 3 Mich. 248; Randall v. Kehlor, 60 Me. 37, 11 Am. Rep. 169.

People v. Peete, 54 Cal. App. 333, 202 P. 51, 53, says the term "connotes no more than freedom from substantial impairment, and the legislature has the right to make any reasonable regulation or condition respecting the enjoyment of trial by jury, provided only that the essentials of a jury trial, as known to the common law, remain unchanged, and the essentials are number, impartiality, and unanimity." It does not mean immunity from legislation. See Humphrey v. Eakeley, 72 N. J. L. 424, 60 A. 1097, 5 Ann. Cas. 929; State v. DeLorenzo, 81 N. J. L. 613, 79 A. 839, Ann. Cas. 1921D, 329.

We do not believe the constitutional convention, or the people, when they adopted the constitution, thought of the jury in any other sense than a jury of the peers and that the real meaning and purpose would

have been exemplified as well had the constitutional provision said "the jury in civil cases, in courts not of record, may consist of less than twelve, as may be prescribed by law," leaving out the word "men." What the convention had in mind, and what the people had in mind, was a jury of twelve electors and the convenience and economy of a lesser number of jurors in the courts of justice of the peace and other courts not of record. We interpret the word "men" in the thought of the convention and of the people of the day as meaning those persons who possessed the qualifications of jurors at that time, with no thought of sex. The constitution is a living, breathing, vital instrument, adaptable to the needs of the day, and was so intended by the people when adopted. It was not a hard and fast piece of legislation, but a declaration of principles of government for the protection and guidance of those upon whose shoulders the government rested.

The territorial legislation in force when the constitution was adopted, prescribing the qualifications of jurors, confined jury service to "all male citizens residing in any of the counties of this territory, having the qualifications of electors, and being over the age of twenty-one years, etc."

At the same time the statute provided that:

"Every male person above the age of twenty-one years . . . who is a citizen of the United States or who has declared upon his oath his intention to become such, and shall have taken an oath to support the constitution of the United States, and persons who have been declared by law to be citizens of the territory shall be entitled to vote. . . ."

It is significant that when the constitution was adopted, the provision defining the qualifications for electors said:

"Every male person of the age of twenty-one years or upwards belonging to either of the following classes, who shall have resided in the state one year, and the county six months, and in the precinct ninety days next preceding any election, shall be deemed a qualified elector at such election:

"1. Citizen of the United States;

"2. Persons of foreign birth who shall have declared their intention to become citizens, . . . etc." Const. § 121.

The qualifications for electors and the qualifications for jurors were practically the same at that time. Evidently it was the intention to

make the electors eligible to jury service. It is reasonable to assume that the change in the qualifications of electors would make a corresponding change in the qualifications of jurors.

Had women been voters at that time there would be no question but the word "men" would have been eliminated and the word "persons" substituted. If the interpretation of the word "men" in its sex relation, as urged by the appellant is to be adopted as a rule in this state then we should hold that the statement "may consist of less than twelve men" showed the people intended that in such courts there must still be twelve jurors but they need not all be men. What was intended at the time of the adoption of the Constitution was that the right to an unanimous and impartial verdict of twelve of his peers should be secured to everyone in jury cases and remain inviolate; but that the number could be reduced in civil cases tried in courts not of record if subsequent legislation provided for it.

Appellant's contention would compel a woman to be tried by twelve men though prosecuted and defended by women lawyers, in a trial conducted under the direction and guidance of a woman judge, and where the clerk and even the bailiffs were women.

Minnesota was confronted with this proposition under circumstances not unlike those at bar. The constitution of Minnesota provides that "the right of trial by jury shall remain inviolate," and after the adoption of the Nineteenth Amendment of the United States constitution the legislature of Minnesota amended the statutes dealing with juries so as to make women eligible for jury duty. In a prosecution for crime the defendant urged that the effect of the Nineteenth Amendment was not to make women competent for jury service, that the legislature of Minnesota could not vary the constitutional right. The Supreme Court of Minnesota in State v. Rosenberg, 155 Minn. 37, 192 N. W. 194, shows that the common law contemplation of a jury meant a jury of peers; that the constitutional provision of a trial by jury meant a trial by jury of the peers as they would be defined at the time of the trial, that this was a matter for the legislature to determine, being a matter of qualification saying: "the qualifications of jurors is so far a matter of legislative control, that the legislature may make any electors eligible to jury service, . . . We hold that the statute of 1921 enacting that petit juries may be composed of twelve men or twelve women or

both is constitutional and valid." This is our interpretation. The judgment is affirmed.

BURKE, NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.

BURR, Ch. J. In a petition for re-hearing appellant stresses two points which he says this court overlooked, or has not clarified.

Appellant says that in Powers v. Williams, 53 N. D. 54, 205 N. W. 9, this court has announced "that under our Constitution the essentials of jury trial and all its incidents were made secure against attack by any future legislature." In the main opinion we have pointed out what the "essentials" are—number, impartiality, and unanimity. These "essentials" are still secure. The "essential" involved in Powers v. Williams, supra, was unanimity.

Appellant says his contention that the statute which places upon women the duty to serve on juries "on its face is arbitrary and capricious, that it is class legislation and an infringement on our Constitution with respect to uniformity of statutes," is not decided. This contention is leveled at the provision which permits women to decline to serve, the declination being based on their own whim or caprice. It is appellant's claim that the statutory enactment creates two classes of citizens—men and women—and gives to one advantages not given to the other.

The history of the jury system shows there was always opportunity for one called to serve to avoid the duty at his own option in certain circumstances. Our statute in existence prior to the conferring of jury duty upon women permitted those "over sixty years of age, ministers of the gospel, county commissioners, . . . practicing physicians, practicing dentists, registered pharmacists, . . . members in good standing of any regularly organized fire company" to decline the service. To permit women to decline is not the introduction of a novel theory. True it is based upon an inexorable natural distinction — sex—but it cannot be said that the well known and well understood and profoundly separate functions of women in the home and in society are not a reasonable and legitimate basis for distinction and permit classification of prospective jurors. While under our constitution no citizen or class of citizens may "be granted privileges or immunities

which upon the same term shall not be granted to all citizens" (article 20 of the Constitution) this does not prevent legislative classification so long as such classification rests upon some difference which bears a true and just relation to the act in reference to which the classification is proposed, and is "reasonable and natural, not artificial or arbitrary." State ex rel. Dorval v. Hamilton, 20 N. D. 592, 129 N. W. 916. We do not believe this statute violates the constitutional provision cited.

Appellant strenuously urges that the decision in Powers v. Williams, supra, shows conclusively that "a constitutional mandate to the legislative branch of the government is, in practice, no more than a grant of power," and therefore, because the prohibitory law was passed after article 20 of the constitution went into effect, the repeal of such article destroyed the legislative power.

It is true this quotation is found in the case cited; but this court was concerned with the interpretation of § 7 of article 1 of the constitution—the whole article being restriction upon the powers of legislation. Without constitutional limitations on its powers the legislature is supreme. Legislation is valid unless it violates constitutional provisions. State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583; Cass County v. Nixon, 35 N. D. 601, 161 N. W. 204, L.R.A.1917C, 897; Daly v. Beery, 45 N. D. 287, 178 N. W. 104; State v. First State Bank, 52 N. D. 231, 202 N. W. 391; Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L.R.A.1918F, 542. The legislature is supreme unless limited by the state or the federal constitution. State ex rel. Cleveringa v. Klein, 63 N. D. 504, 530, 249 N. W. 118, 86 A.L.R. 1523.

If the constitution prohibits the legislature from enacting a law, or directs that a law may be enacted under certain circumstances only any legislation which violates such requirements will be invalid. There was nothing in the constitution, while article 20 was a portion thereof, which prevented the legislature from adopting any sort of prohibitory legislation which it saw fit, in harmony with its purpose. Without article 20 the legislature would have had the right to determine whether it would adopt any prohibitory legislation. Article 20 was a mandate requiring it to do so and thus deprived the legislature of any discretion to determine whether prohibitory legislation was wise or un-

wise. The repeal of article 20 restored to the legislature this discretion to determine the wisdom or folly of prohibitory legislation. Until the legislature, or the people through initiative, say it is unwise the prohibitory legislation stands. The petition for re-hearing is denied.

BURKE, CHRISTIANSON, MOELLRING and NUESSLE, JJ., concur.